UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

DAGAN INVESTMENTS LLC, Individually
and on Behalf of All Others Similarly Situated,

                          Plaintiff,

          vs.

FIRST HIGH-SCHOOL EDUCATION
GROUP CO., LTD., SHAOWEI ZHANG,
LIDONG ZHU, GUANGZHOU ZHAO,
YUANLIN HU, LONGWATER TOPCO B.V.,
EQT MID MARKET ASIA III LIMITED
PARTNERSHIP, EQT MID MARKET ASIA
III GP B.V., EQT FUND MANAGEMENT
S.À R.L., COLLEEN A. DE VRIES,
COGENCY GLOBAL INC., THE
BENCHMARK COMPANY LLC,
VALUABLE CAPITAL GROUP LIMITED,
TFI SECURITIES AND FUTURES
LIMITED, AMTD GLOBAL MARKETS
LIMITED, MAXIM GROUP LLC,
BOUSTEAD SECURITIES, LLC, FUTU
INC., US TIGER SECURITIES, INC. and
FOSUN HANI SECURITIES LIMITED,

                          Defendants.

———————————————————— x

Civil Action No.  1:22-cv-03831

<u>CLASS ACTION</u>

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff Dagan Investments LLC ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by First High-School Education Group Co., Ltd. ("FHS" or the "Company"), the Company's press releases, and analyst reports, media reports, and other publicly disclosed reports and information about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons or entities who purchased FHS American Depositary Shares ("ADSs") in or traceable to the Company's March 2021 initial public offering (the "IPO") seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

## JURISDICTION AND VENUE

2.      The claims alleged herein arise under §§11, 12(a)(2) and 15 of the 1933 Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o.  This Court has jurisdiction over the subject matter of this action pursuant to §22 of the 1933 Act, 15 U.S.C. §77v.

3.      This Court has personal jurisdiction over each of the defendants and venue is proper in this District.  Defendants conducted the IPO in this District, disseminated the Registration Statement (defined herein) into this District, and solicited purchasers of FHS ADSs in this District. The FHS ADSs issued in the IPO also trade in this District.

4.      In addition, the Underwriter Defendants (defined below) maintain principal offices in this District and/or conduct business in this District, the depositary for the ADSs issued in the IPO –

The Bank of New York Mellon – is located in this District, the Company's agent for service of process is located in this District, and New York law, in addition to the federal securities laws, governs the deposit agreement and the ADSs.  Moreover, in the deposit agreement and the underwriting agreement for the IPO, FHS submitted to the non-exclusive jurisdiction of federal and state courts located in New York City, New York.

## PARTIES

5.      Plaintiff Dagan Investments LLC, as set forth in the certification attached hereto and incorporated by reference herein, purchased FHS ADSs directly in and traceable to the IPO and has been damaged thereby.

6.      Defendant FHS, incorporated in the Cayman Islands and headquartered in Yunnan Province, operates private high schools in Western China and provides for-profit tutoring services. The Company's ADSs trade in New York on the New York Stock Exchange ("NYSE") under the ticker symbol "FHS."  Each FHS ADS represents three Class A ordinary shares of the Company. The Company maintains a dual-class voting structure designed to concentrate control over the Company in the hands of insiders out of proportion with their economic stake in FHS.  The Company has Class A and Class B ordinary shares, which have the same rights except that Class A shares are not convertible and entitle holders to one vote per share, while Class B shares are convertible into Class A shares and entitle holders to 20 votes per share.

7.      Defendant Shaowei Zhang ("Zhang") founded FHS and has served as FHS's Chief Executive Officer ("CEO") and Chairman since September 2018.  Defendant Zhang, his spouse Yu Wu, and Longwater Topco B.V. beneficially owned all of FHS's issued Class B ordinary shares at the time of the IPO.  Either directly or through affiliated investment vehicles, Zhang beneficially owned 47% of FHS ordinary shares prior to the IPO, and, after the IPO, continued to own 38% of all

FHS ordinary shares (both Class A and Class B) entitling him to over 65% voting power over the Company (assuming no exercise of the underwriters' overallotment option).

8.  Defendant Lidong Zhu served as FHS's Chief Financial Officer ("CFO") from August 2019 until his resignation in October 2021.  He was also an FHS director from the time of the IPO until December 31, 2021.

9.  Defendant Guangzhou Zhao served as a FHS director at the time of the IPO.

10.  Defendant Yuanlin Hu served as a FHS director at the time of the IPO.

11.  The defendants identified in ¶¶7-10 are referred to herein as the "Individual Defendants."  Each of the Individual Defendants signed the Registration Statement.  In addition, the Individual Defendants participated in the solicitation and sale of FHS ADSs to investors in the IPO for their own benefit and for the benefit of FHS as directors, executive officers and/or major shareholders of the Company.

12.  Defendant Longwater Topco B.V. ("Longwater") is a company incorporated in the Netherlands and controlled by defendant EQT Mid Market Asia III Limited Partnership.  Defendant Longwater was a major sponsor of FHS prior to the IPO, beneficially owning 32% of FHS ordinary shares and party to a shareholders' rights agreement with the Company that gave it special rights and powers over the Company.  Defendant Longwater continued to own 18% of all FHS ordinary shares (both Class A and Class B) after the IPO entitling it to 31% voting power over the Company (assuming no exercise of the underwriters' overallotment option).  Defendant Longwater sold 2.5 million ADSs representing 7.5 million FHS ordinary shares in the IPO.

13.  Defendant EQT Mid Market Asia III Limited Partnership ("EQT L.P.") is an alternative investment fund that indirectly controlled defendant Longwater at the time of the IPO.

14.     Defendant EQT Mid Market Asia III GP B.V. ("EQT GP") is the general partner of defendant EQT L.P.

15.     Defendant EQT Fund Management S.à r.l. ("EFMS") is an investment management company that has the exclusive responsibility for the management and control of the business and affairs of investment vehicles which constitute the majority of the total commitments to EQT L.P. As such, defendant EFMS has the power to control EQT GP voting and investment decisions, including with respect to defendant Longwater.

16.     The defendants identified in ¶¶12-15 are referred to herein as the "EQT Defendants."

17.     Defendant Colleen A. De Vries ("De Vries") served as FHS's Authorized U.S. Representative at the time of the IPO in her position as the Senior Vice President of defendant Cogency Global Inc.

18.     Defendant Cogency Global Inc. ("Cogency Global") was FHS's Authorized U.S. Representative for purposes of the IPO, and defendant De Vries signed the Registration Statement on her own behalf and on behalf of Cogency Global.

19.     The defendants identified in ¶¶17-18 are referred to herein as the "Cogency Global Defendants."

20.     Defendants The Benchmark Company LLC, Valuable Capital Group Limited, TFI Securities and Futures Limited, AMTD Global Markets Limited, Maxim Group LLC, Boustead Securities, LLC, Futu Inc., US Tiger Securities, Inc. and Fosun Hani Securities Limited are referred to herein as the "Underwriter Defendants."  Pursuant to the 1933 Act, the Underwriter Defendants are liable for the materially false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities.  They served as the underwriters of the IPO

and shared over $5.25 million in fees collectively for their services.  The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to solicit purchases of FHS ADSs in the IPO.  Each of the Underwriter Defendants designated personnel to the IPO working group, including investment bankers, analysts, associates and counsel, to market FHS ADSs, and those personnel worked on and approved the content of FHS's Registration Statement and other offering materials.

(b)      The Underwriter Defendants demanded and obtained an agreement from FHS that FHS would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

(c)      Representatives of the Underwriter Defendants also assisted FHS and the Individual Defendants in planning the IPO and purportedly conducted an adequate and reasonable investigation into the business and operations of FHS, an undertaking known as a "due diligence" investigation.  The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning FHS's operations and financial prospects.

(d)      The Underwriter Defendants solicited and sold in the IPO FHS ADSs to plaintiff and other members of the Class.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

### SUBSTANTIVE ALLEGATIONS

21.      Based in China, FHS provides tutoring services and operates private high schools in Western China.  The Company was founded in August 2012 by defendant Zhang.  As of December 31, 2020, FHS had developed a network of 19 schools, offering 14 high school programs, 7 middle

school programs and 4 tutorial school programs for repeat takers of China's national college entrance exam, the Gaokao.  In addition, FHS offers Chinese-English bilingual programs for students interested in pursuing higher education overseas.

22.     On August 10, 2018, the Ministry of Justice ("MOJ") released the Implementation Rules of the Law on Promoting Private Education draft for public comment.  The MOJ draft stipulated, among other things, that foreign-invested enterprises in China and social organizations whose actual controllers are foreign parties shall not hold, participate in, or actually control private schools that provide compulsory education and related-party transactions entered into by private schools shall be open, fair, and just and shall not harm national interests, school interests, or student or teacher interests.  According to an article by international law firm Bird & Bird, published after the draft rules were released, when the MOJ published the circular seeking comments, "concerns were high that the rules may be further tightened for the education business and its foreign investors."

23.     On August 17, 2020, a number of Chinese regulatory agencies including China's Ministry of Education ("MOE"), the Ministry of Finance, and the State Administration of Industry and Commerce, jointly announced the release of the Opinions on Further Strengthening and Regulating the Administration of Education Fees (the "Opinion") for non-profit privately run schools.  The Opinion prohibited the sponsors of non-profit privately run schools from obtaining proceeds from the running of the schools.

24.     The regulatory environment facing FHS within China, and the Company's compliance with existing rules and regulations, was of material importance to investors.  FHS itself acknowledged the material importance of its compliance with applicable rules and regulations, citing

in SEC filings "regulatory compliance" with Chinese regulations as among the most important factors affecting the Company's business, financial results and prospects.

25.     On January 13, 2021, the Company filed with the SEC a registration statement on Form F-1 for the IPO, which, as amended and supplemented, was declared effective on March 10, 2021 (the "Registration Statement").  On March 11, 2021, the Company filed with the SEC a prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement (the "Prospectus").  The Registration Statement was used to sell to the investing public 7.5 million FHS ADSs at $10 per ADS, generating US$75 million in gross offering proceeds.  Of these, defendant Longwater sold 2.5 million ADSs, generating $25 million in gross offering proceeds, none of which went to the Company.  Concurrent with the IPO, FHS also conducted a private placement, selling $4.5 million worth of FHS ADSs to an institutional investor at the IPO price adjusted to reflect the ADS-to-share ratio.

26.     In the week immediately *prior* to the IPO – from March 4, 2021 through March 11, 2021 – China held its annual "Two Sessions" parliamentary meetings, where the two main political bodies of China meet, discuss, and reveal plans for China's policies involving the economy, military, trade, diplomacy, education, the environment and other issues.  Unbeknownst to investors until *after* the IPO, China government leaders in attendance at the Two Sessions meetings had proposed – and ultimately adopted – stringent regulations governing the educational industry with material adverse repercussions for FHS's business, operations and financial prospects.

### MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE REGISTRATION STATEMENT

27.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained

therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

28.     Specifically, the Registration Statement stated that the "[l]evel of student enrollment" at FHS "directly affects revenues and profitability."  According to the Registration Statement, the total number of enrolled students in FHS schools increased from approximately 8,800 as of December 31, 2017 to over 15,100 as of December 31, 2018, and then to more than 21,200 as of December 31, 2019 and further to over 25,800 as of September 30, 2020.  The Registration Statement stated that FHS expected "student enrollment *will continue to increase*, in line with the expansion of our school operations."  The Registration Statement similarly asserted that going forward, "[w]ith the increase in the utilization of our schools in the ramp-up stage and the expansion of our school network, we expect that our student enrollment *will continue to increase in the foreseeable future*."

29.     The Registration Statement further stated that FHS is "*well-positioned to seize the enormous and sustainable demand for high-quality high schools in China*."  The Registration Statement highlighted that FHS had "experienced steady growth in our business," stating that the Company had achieved revenue of "RMB206.5 million, RMB253.7 million, RMB336.5 million (US$49.6 million), RMB216.4 million and RMB282.3 million (US$41.6 million) in 2017, 2018, 2019 and the nine months ended September 30, 2019 and 2020, respectively."

30.     In addition, the Registration Statement stated that the private secondary education industry in China experienced a "CAGR of 18.4%" from 2014 to 2019 and was on track to achieve a "CAGR of 24.9%" from 2019 to 2024.  The Registration Statement represented that this sustained growth was due to a variety of positive factors impacting FHS's business, including "favorable government policies," stating in pertinent part as follows:

This rapid growth is primarily driven by (1) the increased household wealth and enhanced affordability of private education, (2) growing quality and reputation of private education in China, (3) *favorable government policies which encourage and support the development of private schools*, and (4) unevenly distributed and relatively inadequate high-quality public educational resources.

31.     In addition to purportedly favorable government policies, the Registration Statement attributed FHS's growth to the rapid increase in student enrollment in the Company's courses, which the Registration Statement stated had increased 192% between 2017 and the first nine months of 2020.

32.     Similarly, while the Registration Statement stated that there were uncertainties in relation to new legislation or proposed change in the PRC regulatory requirements regarding private education "which *may* materially and adversely affect [FHS's] group structure, our business, financial condition and results of operation," the Registration Statement failed to disclose that these purportedly future, contingent risks were *already* materializing at the time of the IPO.  Additionally, the Registration Statement stated that FHS "*may* not be able to continue to grow as we did in the past due to uncertainties" such as "delays in obtaining government approvals or licenses, and changes in applicable laws and regulations, some of which are beyond our control," but failed to disclose that these adverse facts were *already* materializing.

33.     These statements in ¶¶28-32 were materially false and misleading when made because they failed to disclose the following adverse facts that existed at the time of the IPO:

(a)     that the new rules, regulations and policies to be implemented by the Chinese government following the Two Sessions parliamentary meetings were far more severe than represented to investors and posed a material adverse threat to the Company and its business;

(b)     that contemplated Chinese regulations and rules regarding private education were leading to a slowdown of government approval to open new educational facilities which would have a negative effect on FHS's enrollment and growth; and

(c)     that, as a result, the Registration Statement's representations regarding FHS's historical financial and operational metrics and purported market opportunities did not accurately reflect the actual business, operations, and financial results and trajectory of the Company at the time of the IPO, and were materially false and misleading and lacked a factual basis.

34.     Furthermore, the Registration Statement was required to disclose the information required by Form 20-F.  In turn, Item 5 of Part I of Form 20-F, titled "Operating and Financial Review and Prospects," requires an issuer to disclose "***management's assessment of factors and trends which are anticipated to have a material effect on the company's financial condition and results of operations in future periods***."  (Emphasis in original.)  Specifically, Item 5(D), titled "Trend information," provides:

> The company must identify material recent trends in production, sales and inventory, the state of the order book and costs and selling prices since the latest financial year. ***The company also must discuss, for at least the current financial year, any known trends, uncertainties, demands, commitments or events that are reasonably likely to have a material effect on the company's net sales or revenues, income from continuing operations, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition***.

35.     The information required under this paragraph is essentially the same information required by Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303").

36.     In addition, the Registration Statement was required to disclose the information required by Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), which requires, in the "Risk Factors" section of registration statements and prospectuses, "a discussion of the material factors that make an investment in the registrant or offering speculative or risky" and required each risk factor to "adequately describe[] the risk."

37.     The failure of the Registration Statement to disclose the scope and severity of the adverse government regulations that had been proposed at the Two Sessions parliamentary meetings,

and that would ultimately be adopted by the Chinese government, negatively impacting FHS's business and operations, violated Item 303, because these undisclosed facts were known to defendants and would (and did) have an unfavorable impact on the Company's net sales or revenues, income from continuing operations, profitability, liquidity and capital resources, and rendered the historical information provided in the Registration Statement not indicative of the actual operating results or financial condition of FHS at the time of the IPO. This failure also violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were among the most significant factors that made an investment in FHS ADSs speculative or risky.

38.     Indeed, the risk factors discussed in the Registration Statement were themselves materially misleading because they provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described therein were already occurring. For example, the Registration Statement stated that "[u]ncertainties exist in relation to new legislation or proposed changes in the PRC regulatory requirements regarding private education, which **may** materially and adversely affect . . . our business, financial condition and results of operation." However, the Registration Statement failed to disclose that the governmental regulations proposed at the Two Sessions meeting would materially limit the profitability of private education and tutoring institutions such as those run by FHS, as well as the Company's ability to continue to grow. To the contrary, the Registration Statement misleadingly reassured investors that the legislation introduced in 2018 "shall not have retroactive effect in principle, and except for the situations disclosed in this prospectus, the implementation of the MOJ Draft will not require our existing corporate structure and contractual arrangements to be restructured." The Registration Statement's omission of adverse facts regarding the regulatory environment facing FHS and the Company's slowing growth was materially false and misleading.

## EVENTS FOLLOWING THE IPO

39.     Soon after the IPO, media reports stated that attendees of the Two Sessions conference had proposed stricter regulations to rein in the for-profit education industry, such as regulations aimed at enhancing teacher quality, limiting fee scams, reducing market abuse, and reducing the stress that for-profit educational companies had placed on students in the Chinese educational system.

40.     On May 12, 2021, news reports revealed that the impending government crackdown on for-profit educational companies in China would be much more drastic and far reaching than previously publicly known.  Sources stated that anticipated rules would include measures such as banning on-campus tutoring classes, prohibiting tutoring services during weekend hours, and the imposition of industry-wide fee limitations.  For example, a *Reuters* article titled "China planning new crackdown on private tutoring sector," stated that regulators had taken adverse actions against for-profit educational companies, summarizing the impending regulatory changes in pertinent part as follows:

> ***China is framing tough new rules to clamp down on a booming private tutoring industry***, aiming both to ease pressure on school children and boost the country's birth rate by lowering family living costs, sources told Reuters.

> The clampdown will also have the effect of cooling China's cutthroat tutoring market for kindergarten through to the 12th grade, or K-12 pupils, that has grown exponentially in recent years to around $120 billion.

> \*       \*       \*

> The changes being drafted by the Ministry of Education and other authorities target before- and after-school K-12 tutoring, three people with knowledge of the matter told Reuters.

> One source said the draft rules could be unveiled as early as by end-June.  All three sources requested anonymity as they were not authorised [sic] to speak publicly.

> *Under the planned rules, on-campus academic tutoring classes will be banned, as will both on and off-campus tutoring during weekends, two of the people said. Regulators will also clamp down on off-campus tutoring, in particular for English and math, they added, restricting class times on weekdays.*

*   *   *

> *The new rules would seek to limit fees charged by companies for tutoring, one of the sources told Reuters.*

*   *   *

> The planned rules would add to restrictions imposed in March, including a ban on live-streamed classes for minors after 9 p.m., a crackdown on advertising, and a ban on academic tutoring course offerings for pre-school kids.

41.     On May 14, 2021, China's state council announced rules that it would further tighten regulations on compulsory education and training institutions. The rules were set to take effect on September 1, 2021. According to an article on fitchratings.com titled "Legal Changes in Private Education in China: Rising Risks for K-12 Education Companies; Higher-Education Providers Benefit," the new rules "aim to prohibit profit-making in compulsory education," and "expose K-12 school operators to heightened regulatory risks and their revenue growth may slow . . . until they obtain more clarity on how the changes will be implemented."

42.     Then, on July 23, 2021, China unveiled a sweeping overhaul of its education sector, banning companies that teach the school curriculum from making profits, raising capital or going public. These drastic measures effectively ended any potential growth in the for-profit tutoring sector in China. A *Reuters* report titled "China bars for-profit tutoring in core school subjects" stated that the "move threatens to decimate China's $120 billion private tutoring industry and triggered a heavy selloff in shares of tutoring firms traded in Hong Kong and New York."

43.     On July 26, 2021, FHS issued a press release announcing that the Company "will follow the spirit of the Opinion and comply with all relevant rules and regulations in providing high school education services."

- 13 -

44.    On September 28, 2021, FHS issued a press release announcing the Company's financial results for the first half of 2021 ended June 30, 2021.  The release stated that FHS first half revenue was RMB231.9 million, a year-over-year increase of only 24.8%, a steep drop from the 30.5% year-over-year revenue increase for first nine months of 2020, and the 32.5% year-over-year revenue increase for the full year 2020.  The release stated that September 2021 rules impacting FHS's business "have set series of restrictions and guidelines on operation, taxation, shareholding structure, connected transactions and merge and acquisition of compulsory education."

45.    Also on September 28, 2021, FHS held an earnings call with analysts and investors to discuss the Company's first half of 2021 financial results, which was hosted by defendants Zhang and Zhu.  During his prepared remarks, defendant Zhu stated: "At the beginning of this year, we planned for an aggressive school networks expansion plan, but China local education authorities casted tough K9 education regulation environment and such authorities slowed down the approvals on our high school and Gaokao repeater school opening-ups," which "delayed new school openings" and had caused "overstaffing and idle leased premises and facilities."  Later, when asked about the surprise slowdown in school openings, defendant Zhang stated: "The approval process for schools' authorization license is a lot lower, but moreover, the approval for K9 education is virtually stopped."

46.    On October 13, 2021, FHS issued a release announcing that defendant Zhu had resigned as CFO of FHS, effective October 11, 2021.

47.    On December 16, 2021, FHS issued a press release announcing that it had dismissed its auditor KPMG Huazhen LLP.  The release stated that "KPMG advised the Company of the material weakness in internal control over financial reporting with respect to the lack of sufficient

number of financial reporting personnel with appropriate knowledge, experience and training of U.S. GAAP and SEC financial reporting requirements."

48.    On April 5, 2022, FHS issued a press release announcing that the Company had received a letter from the NYSE stating that the Company was in non-compliance with the NYSE's listing requirements because its total market capitalization and stockholders' equity had fallen below compliance standards.

49.    On April 13, 2022, FHS issued a press release announcing the Company's financial results for the fiscal year ended December 31, 2021.  The release stated that FHS total revenues for the year were just RMB400.2 million, representing a substantial deceleration in the second half of the year.  The release also stated that the Company's total student enrollment had remained almost unchanged at 21,247 students at year's end, representing a paltry 3% increase year-over-year, and that the Company's gross profit had ***declined 18.1%*** during the year.  The release further stated regarding the new Chinese regulations in pertinent part as follows:

> In compliance with the Implementation Rules and other applicable PRC regulations and based on the relevant accounting standard in accordance with U.S. GAAP, the Company has determined to cease to recognize revenues for all activities related to schools providing compulsory education and the sponsor entities after September 1, 2021 within China that are affected by the Implementation Rules, and classified such Affected Entities as discontinued operations.  The discontinued operations of the Affected Entities had certain impact on the Company's financial conditions for the year ended December 31, 2021.  Loss from discontinued operations was RMB10.9 million (US$1.7 million) for the year ended December 31, 2021.

> There still exist uncertainties with respect to the interpretation and enforcement of the Implementation Rules.  The Company will closely monitor the developments related to the Implementation Rules, and continue to assess the possible impacts on the Company and make any applicable actions to keep in compliance with the Implementation Rules and other applicable PRC regulations.

50.    On May 3, 2022, FHS filed a notice with the SEC that it would not be able to timely file its annual report on Form NT 20-F.

51.     By May 10, 2022, FHS ADSs closed below $1 per ADS – ***more than 90% below*** the price at which FHS ADSs were sold to the investing a little more than one year previously.  At the time of the filing of this complaint, the price of FHS ADSs has remained significantly below the IPO price.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action on behalf of all persons or entities who purchased FHS ADSs in or traceable the IPO (the "Class").  Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable.  FHS ADSs are actively traded on the NYSE and millions of ADSs were sold in the IPO.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by FHS or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

54.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law as complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the 1933 Act;

(b)     whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and risks of investing in FHS; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**COUNT I**

**For Violation of §11 of the 1933 Act**
**Against FHS, the Individual Defendants, the Cogency Global Defendants and the**
**Underwriter Defendants**

58.     Plaintiff repeats and realleges ¶¶1-57 by reference.

59.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against FHS, the Individual Defendants, the Cogency Global Defendants and the Underwriter Defendants

60.     This Count does not sound in fraud.  Plaintiff does not allege that any of the defendants had scienter or fraudulent intent, which are not elements of a §11 claim.

- 17 -

61.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

62.     The defendants named herein were responsible for the contents and dissemination of the Registration Statement as signatories and/or directors of the Company or as the underwriters of the IPO.

63.     FHS is the registrant for the IPO.  As the issuer of the shares, FHS is strictly liable to plaintiff and the Class for the misstatements and omissions.

64.     The Individual Defendants and the Cogency Global Defendants signed the Registration Statement and/or were named as FHS directors in the Registration Statement.

65.     The Underwriter Defendants served as underwriters for the IPO.

66.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

67.     By reason of the conduct alleged herein, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

68.     Plaintiff purchased FHS ADSs registered pursuant to the Registration Statement and traceable to the IPO.

69.     Plaintiff and the Class have sustained damages.  The value of FHS ADSs has declined substantially subsequent to and due to defendants' violations.

70.     At the time of their purchases of FHS ADSs, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts

upon which this complaint is based to the time that plaintiff filed this complaint.  Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

**For Violation of §12(a)(2) of the 1933 Act**
**Against FHS, the Individual Defendants, the EQT Defendants and the Underwriter**
**Defendants**

71.     Plaintiff repeats and realleges ¶¶1-70 by reference.

72.     This Count is brought pursuant to §12(a)(2) of the 1933 Act, 15 U.S.C. §77l(a)(2), on behalf of the Class against FHS, the Individual Defendants, the EQT Defendants and the Underwriter Defendants.

73.     The defendants named herein were the sellers and offerors and/or solicitors of purchasers of the ADSs offered pursuant to the Prospectus.

74.     As set forth above, the Prospectus contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.  Defendants' actions of solicitation included preparing the inaccurate and misleading Prospectus and participating in efforts to market the IPO to investors.

75.     Defendants owed to the purchasers of FHS ADSs, including plaintiff and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact.  Defendants, in the exercise of reasonable care, should have known that the Prospectus contained misstatements and omissions of material fact.

76.     Plaintiff and the other members of the Class purchased or otherwise acquired FHS ADSs pursuant to the Prospectus, and neither plaintiff nor the other Class members knew, or in the

exercise of reasonable diligence could have known, of the untruths, inaccuracies and omissions contained in the Prospectus.

77.     Plaintiff, individually and on behalf of the Class, hereby offers to tender to defendants those ADSs that plaintiff and the other Class members continue to own, in return for the consideration paid for those shares together with interest thereon.  Class members who have sold their shares are entitled to rescissory damages.

### COUNT III

**For Violation of §15 of the 1933 Act**
**Against FHS, the Individual Defendants, Cogency Global and the EQT Defendants**

78.     Plaintiff repeats and realleges ¶¶1-77 by reference.

79.     This Count is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, against FHS, the Individual Defendants, Cogency Global and the EQT Defendants.

80.     The Individual Defendants controlled FHS at the time of the IPO by virtue of their dominant voting power and status as the Company's controlling shareholders, directors and/or senior officers.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of FHS.

81.     Defendant Longwater controlled FHS at the time of the IPO through its share ownership and its entry into a shareholder rights agreement which provided defendant Longwater with special shareholder rights, including the right of first refusal and co-sale rights, put option and drag-along rights, preemptive rights, and the right to appoint directors to FHS's board of directors, and contained provisions governing the board of directors and other corporate governance matters.

82.     Defendants EQT L.P., EQT GP and EFMS controlled defendant Longwater at the time of the IPO.

83.     Defendant FHS controlled the Individual Defendants and all of its employees.

84.     Defendant Cogency Global controlled defendant De Vries and all of its employees.

85.     The defendants named herein each were culpable participants in the violations of §§11 and 12(a)(2) of the 1933 Act alleged in the Counts above, based on their participation in the Company's reporting on financial and operational results to investors, having signed or authorized the signing of the Registration Statement, selling FHS ADSs in the IPO and/or having otherwise participated in the process that allowed the IPO to be successfully completed.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding rescission or a rescissory measure of damages;

D.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  May 11, 2022

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VICKI MULTER DIAMOND

*s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vdiamond@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
bcochran@rgrdlaw.com

ABRAHAM FRUCHTER & TWERSKY LLP
JACK G. FRUCHTER
450 Seventh Avenue
38th Floor
New York, NY 10123
Telephone: 212/279-5050
212/279-3655 (fax)
jfruchter@aftlaw.com

Attorneys for Plaintiff

### CERTIFICATION OF DAGAN INVESTMENTS LLC
### IN SUPPORT OF CLASS ACTION COMPLAINT

Dagan Investments LLC ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint against First High-School Education Group Co., Ltd. ("FHS") prepared by counsel in the above-captioned case and has authorized its filing.

2 Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff purchased 10,000 American Depositary Shares of FHS at a price of $10.00 per share in the initial public offering.

5. In the past three years, plaintiff has not sought to serve as a representative party for a class in an action filed under the federal securities laws.

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this

10th day of May, 2022.

_____
DAGAN INVESTMENTS LLC