UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

DAGAN INVESTMENTS LLC, Individually   :   Civil Action No. 1:22-cv-03831-JGK
and on Behalf of All Others Similarly Situated, :
                                      :   CLASS ACTION
                    Plaintiff,        :
                                      :
      vs.                             :
                                      :
FIRST HIGH-SCHOOL EDUCATION           :
GROUP CO., LTD., SHAOWEI ZHANG,       :
LIDONG ZHU, GUANGZHOU ZHAO,           :
YUANLIN HU, LONGWATER TOPCO B.V.,     :
EQT MID MARKET ASIA III LIMITED       :
PARTNERSHIP, EQT MID MARKET ASIA      :
III GP B.V., EQT FUND MANAGEMENT      :
S.À R.L., COLLEEN A. DE VRIES,        :
COGENCY GLOBAL INC., THE              :
BENCHMARK COMPANY LLC,                :
VALUABLE CAPITAL GROUP LIMITED,       :
TFI SECURITIES AND FUTURES            :   DEMAND FOR JURY TRIAL
LIMITED, AMTD GLOBAL MARKETS          :
LIMITED, MAXIM GROUP LLC,             :
BOUSTEAD SECURITIES, LLC, FUTUINC.,   :
US TIGER SECURITIES, INC. and FOSUN   :
HANI SECURITIES LIMITED,              :
                                      :
                    Defendants.       :
                                      :
———————————————————————— x

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...............................................................................................................1

II.   SUMMARY OF THE ALLEGATIONS ........................................................................4

    A.    FHS and Its Business ...............................................................................................4

    B.    The 2021 Two Sessions Signals a Sea-Change in the Industry, Days
          Before the IPO ..........................................................................................................5

    C.    FHS Accelerates Its IPO as a Crack-Down Looms .................................................6

    D.    The Truth Regarding the Education Industry Is Revealed Post-IPO ......................6

    E.    FHS's Troubles Following the Sweeping Regulations .............................................8

III.  ARGUMENT ....................................................................................................................8

    A.    Plaintiff Has Pled Actionable Claims Under Section 11 .........................................9

          1.    Defendants Failed to Disclose that the Xi Government Disfavored
               For-Profit Education and that Regulations Would Significantly
               Impact FHS, as Well as FHS's True Relationship to Hengshui .................9

          2.    Plaintiff Has Adequately Pled Materiality ................................................13

          3.    Plaintiff's Claims Do Not "Sound in Fraud" ............................................14

    B.    Plaintiff Has Pled Actionable Claims Under Section 12(a)(2) ..............................17

    C.    Defendants' Challenges Are Without Merit ...........................................................17

IV.   CONCLUSION................................................................................................................23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Banerjee v. Zhangmen Education Inc.*,
2023 WL 2711279
(S.D.N.Y. Mar. 30, 2023) ..................................................................................19, 20, 21

*Christine Asia Co. v. Ma*,
718 F. App'x 20 (2d Cir. 2017) ........................................................................................11

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
701 F.Supp.2d 506 (S.D.N.Y. 2010)................................................................................15

*City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*,
2010 WL 6617866
(E.D.N.Y. Dec. 23, 2010) ................................................................................................17

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
814 F.Supp.2d 395 (S.D.N.Y. 2011)................................................................................17

*Ellenburg v. JA Solar Holdings Co.*,
2010 WL 1983375
(S.D.N.Y. May 17, 2010)..................................................................................................13

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017)..................................................................................................8

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F.Supp.3d 526 (S.D.N.Y. 2017)...........................................................................13, 14

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995).............................................................................................................9

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983)................................................................................................8, 9, 13

*Horowitz v. Sunlands Tech. Grp.*,
2022 WL 4392401
(E.D.N.Y. Sept. 21, 2022)................................................................................................22

*In re Advance Auto Parts, Inc., Sec. Litig.*,
2020 WL 599543
(D. Del. Feb. 7, 2020) ......................................................................................................16

**Page**

*In re Barclays Bank PLC Sec. Litig.*,
2017 WL 4082305
(S.D.N.Y. Sept. 13, 2017) ..................................................................................................12

*In re Chembio Diagnostics, Inc. Securities Litigation*,
616 F.Supp.3d 192 (E.D.N.Y. 2022) ...................................................................................16

*In re CPI Card Grp. Inc. Sec. Litig.*,
2017 WL 4941597
(S.D.N.Y. Oct. 30, 2017) ....................................................................................................15

*In re Facebook, Inc.*,
986 F.Supp.2d 487 (S.D.N.Y. 2013)....................................................................................22

*In re Fuwei Films Sec. Litig.*,
634 F.Supp.2d 419 (S.D.N.Y. 2009).....................................................................................22

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
982 F.Supp.2d 277 (S.D.N.Y. 2013).....................................................................................17

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010)..................................................................................................17

*In re OSG Sec. Litig.*,
971 F.Supp.2d 387 (S.D.N.Y. 2013)......................................................................................15

*In re ProShares Tr. Sec. Litig.*,
889 F.Supp.2d 644 (S.D.N.Y. 2012)......................................................................................15

*In re Sanofi Sec. Litig.*,
2015 WL 365702 (S.D.N.Y. Jan. 28, 2015),
*aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).......................................15, 16

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)....................................................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.*,
381 F.Supp.2d 158 (S.D.N.Y. 2003)......................................................................................17

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F.Supp.2d 512 (S.D.N.Y. 2011)......................................................................................23

**Page**

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016)........................................................................................21

*Lea v. TAL Educ. Grp.*,
    837 F. App'x 20 (2d Cir. 2020) .................................................................................22

*Lewy v. SkyPeople Fruit Juice, Inc.*,
    2012 WL 3957916
    (S.D.N.Y. Sept. 10, 2012).........................................................................................9

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011).......................................................................................9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015).....................................................................................23

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011).....................................................................................................9

*Mayo v. Fed. Gov't*,
    558 Fed. App'x 55 (2d Cir. 2014).............................................................................11

*McKenna v. Smart Techs. Inc.*,
    2012 WL 1131935
    (S.D.N.Y. Apr. 3, 2012)...........................................................................................16

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
    2022 WL 17815767
    (2d Cir. Dec. 20, 2022) ...................................................................................... *passim*

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013).......................................................................................9

*Okla. L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
    517 F.Supp.3d 196 (S.D.N.Y. 2021).......................................................................12

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012).....................................................................................12

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
    2020 WL 5757628
    (S.D.N.Y. Sept. 27, 2020).........................................................................................15

**Page**

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)............................................................................13, 20

*S.E.C. v. Sequential Brands Grp., Inc.*,
  2021 WL 4482215
  (S.D.N.Y. Sept. 30, 2021).....................................................................................19

*Sheet Metal Workers Loc. 32 Pension Fund v. Terex Corp.*,
  2018 WL 1587457
  (D. Conn. Mar. 31, 2018).................................................................................12, 13

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
  248 F.Supp.3d 428 (S.D.N.Y. 2017)......................................................................14

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
  707 F.3d 95 (1st Cir. 2013)....................................................................................12

*Speakes v. Taro Pharm. Indus., Ltd.*,
  2018 WL 4572987
  (S.D.N.Y. Sept. 24, 2018)................................................................................11, 18

*Steginsky v. Xcelera Inc.*,
  741 F.3d 365 (2d Cir. 2014)...................................................................................11

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015)....................................................................................20

*Wallace v. IntraLinks*,
  2013 WL 1907685
  (S.D.N.Y. May 8, 2013).........................................................................................15

*Wang v. Cloopen Grp. Holding Ltd.*,
  2023 WL 2534599
  (S.D.N.Y. Mar. 16, 2023) ..............................................................10, 14, 17, 20

*Winter v. Stronghold Digit. Mining, Inc.*,
  2023 WL 5152177
  (S.D.N.Y. Aug. 10, 2023) ........................................................................................9

*Yi Xiang v. Inovalon Holdings, Inc.*,
  254 F.Supp.3d 635 (S.D.N.Y. 2017)......................................................................21

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77k .......................................................................................................... *passim*
  §77k(a) ...................................................................................................................8
  §77l(a)(2) ................................................................................................. *passim*
  §77o ..............................................................................................................1, 3, 15
  §78j(b) ..................................................................................................................16

28 U.S.C.
  §2072(b) ................................................................................................................16

Securities Exchange Act of 1934 ...........................................................................11, 16

Federal Rules of Civil Procedure
  Rule 8 ......................................................................................................................9
  Rule 9(b) ................................................................................................3, 14, 15, 16
  Rule 15(a)(2) .........................................................................................................23

**SECONDARY AUTHORITIES**

SEC Staff Accounting Bulletin No. 99
  64 FR 45150-01, 1999 WL 625156 (Aug. 19, 1999) ...............................................14

Plaintiff Dagan Investments LLC respectfully submits this memorandum of law in opposition to Defendants' motion to dismiss the Second Amended Complaint ("SAC," ECF 52).[1]

## I.   INTRODUCTION

Plaintiff brings this action on behalf of itself and other shareholders of FHS, alleging claims under Sections 11, 12(a)(2) and 15 of the 1933 Act, for false and misleading statements and omissions made in connection with the Company's March 2021 IPO.  In 2021, based on the exponential growth in China's for-profit education industry, FHS sought to cash in and list its ADSs on the NYSE before regulations derailed the industry.  In March 2021, as FHS was preparing to go public, China kicked off its annual Two Sessions meeting, wherein China's policies involving education, among other issues of national importance, were discussed.

As Two Sessions began, but unbeknownst to future IPO investors, the outlook *in China* regarding the for-profit education industry was grim, with reports and statements from President Xi and his administration heralding a new wave of "comprehensive reforms" that would clamp down on the industry's practices.

Facing the reality that the Chinese Government was about to entirely transform for-profit education, FHS attempted to accelerate the effectiveness of its Registration Statement before Two Sessions concluded, and before news could spread to the U.S.  The Registration Statement, however, was negligently prepared and, as a result, contained untrue statements of material fact, omitted to

---

[1]   "¶_" references are to the SAC, "MTD" references are to the Memorandum in Support of the Motion to Dismiss (ECF 55), "Ex." references are to the exhibits of the Ni Declaration (ECF 56), and all defined terms have the meanings assigned in the SAC.  Unless otherwise noted, emphasis is added and internal quotations and citations are omitted.

disclose material information that was required to be disclosed therein, and was not prepared pursuant to required regulations.

The Registration Statement was affirmatively and materially misleading because it favorably portrayed FHS's prospects, including its expansion plans, and how government policies favored private education, despite adverse and worsening information that undermined those representations; namely, stricter industry-wide regulations and stronger enforcement, including a slowdown on approvals for new educational facilities, stricter scrutiny and restrictions on for-profit education, and curbs on tutoring.  Significantly, this information was *known or available to Defendants before the IPO*, which Defendants do not deny, because of, among other reasons, Zhang's affiliation with the CPPCC, that met at Two Sessions.

Additionally, the Registration Statement failed to satisfy the affirmative disclosure requirements imposed by Item 5 of Part I of Form 20-F ("Item 5") and Item 105, which collectively required the disclosure of trends, uncertainties, and risks facing FHS at the time of the IPO.  The Registration Statement was further materially false and misleading in portraying FHS's relationship to Hebei Hengshui ("Hengshui"), a well-known elite school in China.  By highlighting its connection to Hengshui, Defendants sought to imply that FHS could attract higher quality students.  Hengshui later publicly disavowed any connection to FHS's IPO.

Relying on the negligently prepared Registration Statement, on or about March 11, 2021, Defendants commenced the IPO, reaping $75 million in gross proceeds.

Shortly after the IPO, the for-profit private education business in China began to unravel, as Xi's directives to curtail that business began to be put into effect.  When the truth regarding the Registration Statement's material misrepresentations and omissions became known after the IPO, the

trading price of FHS ADSs declined substantially – plummeting 91% from the IPO to the filing of this action.  FHS ADSs have since been delisted from the NYSE.

Defendants principally claim that the government crackdown on for-profit education had little or no impact on FHS's business or that they could not have known how the regulations would impact it.  MTD 12, 15.  Moreover, they desperately argue that Plaintiff has alleged fraud, as that is the only way they can support their motion, and try to import a scienter element into Plaintiff's claims.  MTD 19.  But scienter is not an element of Sections 11, 12 or 15, even if the Rule 9(b) standard is applied – which it should not.  Cases are legion in this Circuit that find pleading "knowledge" in a Section 11 case *is not* the equivalent of pleading fraud.  In any event, Defendants' attempt must be rejected as the SAC explicitly states that fraud is not being alleged, that the statutes allegedly being violated are not fraud-based and that Plaintiff is proceeding solely on a negligence/strict liability theory.

To challenge materiality, MTD 10-13, Defendants ignore the SAC's allegations of a wide-spread crackdown on for-profit education, and instead focus on after-school tutoring and restrictions on compulsory education (K-9).  Defendants, however, do not address the more significant aspects of the crackdown on for-profit education, which, among other things, included an overall slowdown on approvals of new high schools and Gaokao tutoring, upsetting FHS's expansion plans, and making it more difficult for for-profit private education to operate.

As to Defendants' claim that they could not have known how the regulations would impact FHS, MTD 15, they miss the point.  Plaintiff is not alleging that Defendants knew *precisely* how the regulations might affect FHS.  Instead, Plaintiff is alleging that at the time of the IPO, President Xi, the authoritative dictator in China, or his administration, repeatedly stated that he disliked for-profit

education and was actively implementing and enforcing policies that would drastically reduce the role of for-profit education in China, which Defendants did not disclose.

Defendants challenge this omitted information by claiming it was already "public." MTD 1-2. But, the Second Circuit has recently found that overseas news – ***including China, where the news here existed*** – is not considered "public" for the purposes of the securities laws.

As to the claims about Hengshui, Defendants try to castigate them as an "afterthought" and claim they did not misrepresent FHS's connection to Hengshui in the Registration Statement. MTD 18. Tellingly, they avoid addressing Hengshui's disavowal of its connection to the IPO, and do not deny Hengshui's public statements. Moreover, FHS needed to significantly revise its stated connections to Hengshui. *See infra* §III.C. These allegations alone are sufficient to deny the MTD.

For these reasons, Defendants' Motion to Dismiss should be denied.

## II.    SUMMARY OF THE ALLEGATIONS

### A.    FHS and Its Business

FHS was founded in August 2012, when it established its first school to provide after-school tutoring services. ¶41. Since then, the for-profit education industry has boomed, as parents seek to provide their children with the best opportunities to succeed at the Gaokao, and gain entrance to China's most prestigious colleges and universities. ¶¶34-40.

As of September 30, 2020, FHS had developed a network of 19 schools, offering fourteen high school programs, seven middle school programs and four tutorial school programs for Gaokao repeaters, with a total of 25,867 students across its network. ¶41.

Seizing on the growth of the for-profit school and tutoring industries, on January 13, 2021, FHS filed its Registration Statement. ¶53. FHS's SEC filings provided that "regulatory compliance" was among the most important factors affecting the Company's business, financial results, and prospects. ¶52.

**B.    The 2021 Two Sessions Signals a Sea-Change in the Industry, Days
      Before the IPO**

Every year, the two main political bodies of China (the CPPCC, China's top political advisory committee, and the NPC, which has law-making powers) meet for Two Sessions, where plans for China's policies involving education, among other issues, are revealed.  ¶¶54-55, 57. Zhang, as a member of CPPCC's Education Section, was eligible to attend Two Sessions.  Thus, Zhang had access to, and was likely aware of, the topics discussed and the news being reported on the meetings.  ¶¶59-61.

Unbeknownst to investors until *after* the IPO, however, government leaders at Two Sessions had discussed, proposed, and ultimately adopted, stringent regulations governing the educational industry with material adverse repercussions for FHS's business, operations, and financial prospects. ¶62.  Indeed, the news reports *in China* during Two Sessions, including coverage of President Xi's speech, suggested the imminent imposition of "*comprehensive reform*" that would severely impact the for-profit education industry, and would likely drastically reduce the value of companies such as FHS; even worse they could threaten whether those companies would exist in their then-current form, if at all.  *Id*.  Anyone involved with the education sector at the time – including Zhang – was undoubtedly aware of the existence of these regulations, the discussions about them and their likely impact on the industry, because many of the Two Sessions speeches, especially Xi's speech, were broadcast throughout the PRC.  *Id*.

The Chinese news reports regarding Two Sessions highlighted President Xi's emphasis on *public* education and loathing of commercialized education, which would work to the detriment of for-profit, private education, and signaled to the industry that their businesses were about to drastically change.  *See, e.g.*, ¶¶63-64, 68.  President Xi's comments included statements that emphasized: the *socialist orientation* in running schools and the *non-profit nature of education*

(¶63); the need to "*comprehensively promote the reform of education methods*, *school-running mode*, and management systems" (¶64); and that "*Education…must not be led by the profits-first logic…*[because] *Treating education as a business to run inevitably leads to all sorts of ills and endless harm*." ¶68.

## C.    FHS Accelerates Its IPO as a Crack-Down Looms

Even prior to Two Sessions, the Xi crackdown on for-profit education was being foretold in China. ¶¶44-51. Seeing that situation, on March 8, 2021, Zhang and Benchmark Company LLC sent letters to the SEC seeking to have the effectiveness of FHS's Form-1 accelerated. ¶¶71-72. In an apparent response to these requests, the Registration Statement was declared effective on March 10, 2021. ¶73. On March 11, 2021, FHS filed the Prospectus, which incorporated and formed part of the Registration Statement. *Id.*

## D.    The Truth Regarding the Education Industry Is Revealed Post-IPO

Soon after the IPO, media reports emerged *in the U.S.* stating that attendees of Two Sessions had proposed stricter, comprehensive regulations to rein in the for-profit education industry. ¶75. For example, one report noted that, "*a forthcoming campaign of regulatory reform*" was coming. ¶76. Another article stated that, "President Xi Jinping stress[ed] the need to *broadly stimulate the reforms of education methods*, [and] *school running mode*," and that, "[t]he *comprehensive reforms in educational system* will uphold the sustainable growth within the society." ¶77.

By April 6, 2021, less than a month after the IPO, Zhang acknowledged on an FHS earnings call that "*regulation will be much more strict compared to before*, which also includes *limiting their operating hours*, especially for K-9 or the mandatory education levels, pretty much *no new license will be distributed and issued anymore*" – signaling a halt on expansion. ¶78.

As May approached, news reports revealed that the initial phase of the impending government crackdown on for-profit educational companies in China would be much more drastic

and far reaching than FHS had publicly disclosed. ¶79. Then, on May 14, 2021, China's state council announced the execution of the Implementation Rules, which would further tighten regulations to curb profit-making in compulsory education. ¶80. On May 21, 2021, news outlets reported that President Xi had "reviewed and passed" regulations publicized as the "Double Reduction" measures, which represented a clampdown on the "qualification of after-school tutors, false advertising and overcharging for services." ¶81.

On July 23, 2021, China officially unveiled the Double Reduction, a sweeping overhaul of its education sector, banning companies that teach core subjects taught in schools from making profits, raising capital or going public. These drastic measures effectively ended any potential growth in the for-profit, Gaokao-oriented education sector in China. ¶¶84-85.[2]

More bad news followed on July 26, 2021, when Hengshui issued a public statement that refuted its alleged connection to the Company. ¶86. Despite representing in the Registration Statement that FHS "partnered," and had an ongoing relationship with Hengshui, Hengshui took the unusual step of announcing it had no affiliation with FHS's IPO, nor authorized FHS or its affiliates to carry out any educational, recruitment, or business activities that use the name Hengshui. ¶87.

---

[2]     The Double Reduction refers to a reduction in the total amount and time required by school homework and a reduction in the burden of off-campus or after-school training programs, constraining the methods FHS had employed to be successful. ¶84n.3. The Double Reduction, along with the Implementation Rules, showed that for-profit education was subject to increasingly intrusive governmental control that would adversely impact FHS's business, which was not disclosed in the Registration Statement. ¶80n.2.

The Implementation Rules eventually became effective on September 1, 2021, covering a broad range of subjects, seeking to assert governmental control over virtually every aspect of private, for-profit schools, in accordance with Xi's directives. ¶88.

### E.      FHS's Troubles Following the Sweeping Regulations

On September 28, 2021, FHS issued a press release and had an earnings call announcing the Company's financial results for the first half of 2021 ended June 30, 2021. ¶89. During the call, Zhang and Zhu essentially admitted that they knew FHS's planned expansion was not occurring because of slow-downs in approvals of expansion, not disclosed in the Registration Statement. ¶90. On October 13, 2021, just two weeks later, Zhu resigned as CFO. ¶91.

Then, on November 7, 2022, after the market closed, trading in FHS ADSs was suspended. ¶113. On November 17, 2022, FHS announced that it received a letter from the NYSE that delisting proceedings had been commenced, and by November 22, 2022, the NYSE removed FHS ADSs from listing and registration. ¶¶113-114.

### III.    ARGUMENT

Section 11 of the 1933 Act "imposes strict liability on issuers and signatories, and negligence liability on underwriters, for material misstatements or omissions in a registration statement." *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 99 (2d Cir. 2017). To plead a claim, a plaintiff need only allege that the Registration Statement contained: (i) an untrue statement of material fact; (ii) omitted to state a material fact that was necessary to make the statements not misleading; *or* (iii) omitted to state a material fact that was required to be disclosed. 15 U.S.C. §77k(a). Thus, "[S]ection [11] was designed to assure compliance with the disclosure provisions of the [1933] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). Accordingly, a plaintiff "need only show a material misstatement or omission to establish [its] *prima*

- 8 -

*facie* case."  *Id*. at 382.   Upon such a showing, "an issuer's liability...is absolute," *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715-16 (2d Cir. 2011), "even for innocent misstatements." *Huddleston*, 459 U.S. at 382.

Accordingly, plaintiff "need not allege scienter, reliance, or loss causation" for 1933 Act claims.  *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013); *Winter v. Stronghold Digit. Mining, Inc.*, 2023 WL 5152177, *6 (S.D.N.Y. Aug. 10, 2023) (scienter not required, collecting cases).  Untrue statements and omissions are "material" if there is a "substantial likelihood" that their disclosure "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).  Unless a Section 11 claim sounds in fraud, which here it does not, only "notice pleading" is required, *i.e.*, "the 'short and plain statement' requirements" of Rule 8. *Royal Bank*, 709 F.3d at 120; *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, *7 (S.D.N.Y. Sept. 10, 2012).

### A.    Plaintiff Has Pled Actionable Claims Under Section 11

#### 1.    Defendants Failed to Disclose that the Xi Government Disfavored For-Profit Education and that Regulations Would Significantly Impact FHS, as Well as FHS's True Relationship to Hengshui

Consistent with their "particularly heavy" "moral responsibility to the [investing] public" under the 1933 Act, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 581 (1995), Defendants had a burden of disclosure before the IPO, with three independent bases requiring disclosure of the Xi-directed shake-up of the for-profit education industry, and the disastrous effect it would have on the Company, in addition to FHS's true relationship with Hengshui.

First, "[i]t is well-established…that once a company speaks on an issue or topic, there is a duty to tell the whole truth, [e]ven when there is no existing independent duty to disclose information on the issue or topic." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016).

- 9 -

Indeed, "[h]aving chosen to speak…, Defendants had a duty to speak accurately, giving all material facts…to permit investors to evaluate the potential risks." *Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2022 WL 17815767, \*4 (2d Cir. Dec. 20, 2022).

The Registration Statement made representations regarding: (i) the strength of FHS's business, due to its proven track record and relationship with governments (¶98); (ii) the favorable governmental policies that would assist with FHS's expansion plans (¶104); (iii) FHS's growth potential and rapid student enrollment (¶¶100-103); and (iv) that FHS "partnered" with Hengshui, a well-known and prestigious school in China (¶99). These representations were rendered false or misleading because Defendants failed to disclose that: (i) President Xi's administration disfavored private, for-profit education and would seek to hamper its development (¶¶59-69); (ii) the regulations being considered at the time of the IPO were more severe than represented and threatened the success, and even the sustainability, of the for-profit education business, which was likely known by Zhang due to his involvement with the CPPCC and access to Xi's speeches (*id.*); (iii) the contemplated regulations would lead to a slowdown in approvals to open new facilities, derail FHS's expansion plans and would eventually drastically reduce operations and threaten FHS's corporate structure (¶¶89-90); (iv) Hengshui had no affiliation with FHS's IPO nor authorized FHS or its affiliates to operate in its name[3] (¶87); and (v) as a result, the Registration Statement's representations regarding FHS's historical financial and operational metrics and purported market opportunities and the representations about favorable government policies were materially false and

---

[3]    Defendants' baseless claim that the false and misleading statements regarding Hengshui are an "afterthought" (MTD 18) is of no moment on this motion to dismiss. *Wang v. Cloopen Grp. Holding Ltd.*, 2023 WL 2534599, \*2 (S.D.N.Y. Mar. 16, 2023) (Koeltl, J.) (unrelated statements found actionable).

misleading and lacked a factual basis.[4] ¶¶105-106; *Christine Asia Co. v. Ma*, 718 F. App'x 20, 23-24 (2d Cir. 2017) (error to dismiss claims that omitted "the true facts about the threat to the company that had been communicated by the government of China," under the stricter requirements of the 1934 Act).

*Second*, Defendants had an independent legal duty of disclosure under Item 5, which requires an issuer to disclose "factors and trends which are anticipated to have a material effect on the company's financial condition and results of operations in future periods." ¶107. Defendants failed to disclose the scope and severity of the adverse government regulations that would negatively impact FHS's business and operations. ¶110. At minimum, the full extent of the crackdown on for-profit education by Xi was a material uncertainty that required disclosure. This failure violated Item 5 because the undisclosed facts that Xi sought to curtail FHS's business through strict regulations were known to Defendants[5] and would (and did) have an unfavorable impact on the

---

[4]     Defendants' attempt to muddy the facts regarding issues such as the shock of the regulations, Hengshui's relationship with FHS, the IPO proceeds, and Zhang's involvement with the CPPCC is improper at this stage of this action. *See, e.g.*, MTD 9-10, 18-20. Courts must "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in…plaintiff's favor." *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014); *see also Mayo v. Fed. Gov't*, 558 Fed. App'x 55, 56 (2d Cir. 2014) ("[a] court normally may not look beyond the four corners of the complaint in considering a motion to dismiss"). Regardless, the facts surrounding these issues, are, at worst, issues of fact, not properly resolved at the motion to dismiss stage. *Speakes v. Taro Pharm. Indus., Ltd.*, 2018 WL 4572987, *6 (S.D.N.Y. Sept. 24, 2018).

[5]     While Defendants challenge Zhang's direct knowledge (MTD 20), they never challenge that President Xi's statements were broadcast throughout China or that Zhang knew of them. It is a

Company's net sales or revenues, income from continuing operations, profitability, liquidity and capital resources, and rendered the historical information provided in the Registration Statement not indicative of the future operating results or financial condition of FHS at the time of the IPO. ¶¶59-61, 89, 95, 107-108, 110; *see In re Barclays Bank PLC Sec. Litig.*, 2017 WL 4082305, *8n.11 (S.D.N.Y. Sept. 13, 2017) (finding that Item 5 requires the same disclosure as Item 303); *Moab Partners*, 2022 WL 17815767, *4 (uncertainty related to U.N. regulation required disclosure under Item 303); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 121 (2d Cir. 2012) (alleged defects with semiconductor chips constituted a trend or uncertainty under Item 303); *see also Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 105 (1st Cir. 2013) ("uncertainties" under Item 303 related to undisclosed "adverse events" concerning company's main drug).

*Third*, Defendants had an independent disclosure obligation under Item 105, requiring a "'discussion of the material factors that make an investment in the registrant or offering speculative or risky.'" ¶109. Because none of the risk disclosures in the Registration Statement advised potential investors of an already-occurring change in the regulatory landscape of the for-profit education industry (¶111) or how this curtailment on for-profit education was being directed by Xi – Defendants violated that duty. *See, e.g.*, *Okla. L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 517 F.Supp.3d 196, 210 (S.D.N.Y. 2021) ("Under [Item 105], risk disclosures are actionable 'half-truths' when a company discloses a risk that ***could*** have an impact on its business when, in fact, that risk ***has already materialized***."); *Sheet Metal Workers Loc. 32 Pension Fund v. Terex Corp.*, 2018 WL

reasonable inference that the CEO of an education company would know of Xi's statements and proposed regulations. Moreover, Defendants do not challenge that Xi disfavored for-profit education and was seeking ways to curtail it, while propping up public education, through harsher regulations.

1587457, *13 (D. Conn. Mar. 31, 2018) (quoting *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) ("'[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired'")).

### 2.    Plaintiff Has Adequately Pled Materiality

Having pled the above failures to disclose information concerning Xi, the for-profit education industry, and the Company's true relationship with Hengshui, Plaintiff need only plead the materiality of those omissions to make its *prima facie* case. *Huddleston*, 459 U.S. at 382. "A statement or omission is material if 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act.'" *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F.Supp.3d 526, 549 (S.D.N.Y. 2017) (Koeltl, J.). "Because materiality is a mixed question of law and fact, the Court of Appeals had indicated that its resolution often implicates a jury question" – *i.e.*, not an appropriate ground for dismissal. *Id.* at 652.

The materiality of the Xi-directed up-ending of the for-profit education industry, and the effect it would have on FHS's growth potential and student enrollment – the very way the Company would make money and be a sustainable, thriving company – is indisputable. It is unquestionable that knowing that Xi disfavored for-profit education and wanted to curtail it would have changed the total mix of information. Because the misstatements at issue in this case go to the very heart of FHS's business, they are not "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ellenburg v. JA Solar Holdings Co.*, 2010 WL 1983375, *5 (S.D.N.Y. May 17, 2010) (Koeltl, J.). The same is true of the Company's relationship with Hengshui, which the Company used to promote and legitimize its business – in fact, the Registration Statements mentions Hengshui no less than 120 times.

Finally, the decrease in the stock price of approximately ***91%*** from the IPO to the filing of this action after the truth was revealed (¶¶14, 95) further supports materiality. *See* SEC Staff

- 13 -

Accounting Bulletin No. 99, 64 FR 45150-01, 1999 WL 625156 (Aug. 19, 1999) (including stock-price "volatility" and "market reaction" among materiality factors).  Thus, Plaintiff has satisfied materiality and made its prima facie case for Section 11 liability.[6]

### 3.      Plaintiff's Claims Do Not "Sound in Fraud"

If a Section 11 claim pleads "at most negligence, [it] need only satisfy the notice pleading requirements of [Rule] 8(a)."  *comScore*, 268 F.Supp.3d at 557-58.   Critically, despite the Defendants' many assertions to the contrary (*i.e.*, MTD 19-21), the SAC does not allege fraud and specifically states that this action was brought pursuant to "non-fraud, strict liability claims." ¶1.  In fact, the SAC, in alleging Section 11 violations, states, "Count [I] does not sound in fraud.  Plaintiff does not allege that any of the defendants had scienter or fraudulent intent, which are not elements of a Section 11 claim."[7]  ¶123; *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F.Supp.3d 428, 448 (S.D.N.Y. 2017) ("Where a plaintiff expressly disclaims allegations of fraud and affirmatively alleges negligence, this is generally sufficient to relieve the plaintiff of Rule 9(b)'s requirements.").

Plaintiff's allegations of "knowledge" (MTD 19-20), do not change the analysis.  Plaintiff asserts multiple bases for a legal duty to disclose the omitted regulations and effect on the Company, including Item 5, which requires pleading a "known" trend or uncertainty.  *See* ¶¶107-108, 110; *Moab Partners*, 2022 WL 17815767, *2 ("[t]he failure to make a material disclosure required by Item 303 can serve as the basis for claims under Section[] 11").  But that required allegation of

---

[6]      The Cogency Defendants join in the Sections 11 and 15 arguments, and note that they "are only alleged to have signed the Registration Statement as FHS's authorized representative." MTD 1n.1.  This Court has recently rejected similar arguments by the same Defendants in a different action.  *See Cloopen*, 2023 WL 2534599, *19.

[7]      The SAC's only reference to "scienter" or "fraudulent intent."

knowledge – or at least a "plausible inference" of knowledge – does not imply fraud: "[T]he allegations that [the defendant] failed to disclose a known uncertainty supports the claim of Section 11 and 12(a)(2) liability pursuant to Regulation S–K, which plaintiffs are able to allege without requiring the application of Rule 9(b)." *Wallace v. IntraLinks*, 2013 WL 1907685, *12 (S.D.N.Y. May 8, 2013) (citing *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F.Supp.2d 506, 513 (S.D.N.Y. 2010) ("[T]hat a fact was known and not disclosed does not mean, as a matter of law, that the circumstances of the resulting omission sound in fraud.")); *Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, *10 (S.D.N.Y. Sept. 27, 2020) (knowledge distinct from fraudulent intent).

Because Plaintiff's allegations of knowledge are as consistent with negligence – which it pleads (¶¶8, 12, 96) – as with fraud – which it disavows (¶¶1, 123) – that is how they should be understood. *See, e.g.*, *Citiline*, 701 F.Supp.2d at 513 ("allegations against the underwriters sound in negligence" when "the underwriters are alleged only to have failed to disclose facts that they knew"); *In re OSG Sec. Litig.*, 971 F.Supp.2d 387, 406 (S.D.N.Y. 2013) ("Plaintiffs' assertion that…Defendants knew or should have known…does not constitute an allegation of fraud, but rather of negligence."); *In re CPI Card Grp. Inc. Sec. Litig.*, 2017 WL 4941597, *3 (S.D.N.Y. Oct. 30, 2017) (plaintiff asserting Item 303 may "proceed[] under strict liability and negligence theories").

But even if necessary, Plaintiff has satisfied Rule 9(b)'s ***particularity*** requirement.  The SAC sufficiently "(1) specif[ies] the statements that the plaintiff contends were fraudulent" (¶¶98-104); "(2) identif[ies] the speaker" (*id.*); "(3) state[s] where and when the statements were made" (*id.*); and "(4) explain[s] why the statements were fraudulent" (¶106).  *See In re ProShares Tr. Sec. Litig.*, 889 F.Supp.2d 644 (S.D.N.Y. 2012) (Koeltl, J.).  Nothing more is required.

Rule 9(b) does not require that Plaintiff plead scienter.  MTD 19.  While "[c]laims that sound in fraud must satisfy the heightened pleading requirements of Rule 9(b),…that Rule does not add

- 15 -

substantive elements such as scienter…." *In re Sanofi Sec. Litig.*, 2015 WL 365702, \*13n.8 (S.D.N.Y. Jan. 28, 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016). Rule 9(b) *can never* add substantive elements, such as scienter, to Section 11 claims. *See, e.g.*, *McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, \*21 (S.D.N.Y. Apr. 3, 2012) ("That the Amended Complaint sounds in fraud simply connotes the pleading standard that plaintiff must meet under procedural rules. It is axiomatic that procedural rules cannot eviscerate substantive law, imposed by statute or otherwise….The [1933] Act is a strict liability statute…and does not…require…scienter.") (citing 28 U.S.C. §2072(b) (procedural rules "shall not abridge, enlarge or modify any substantive right")).

Defendants' reliance on *In re Chembio Diagnostics, Inc. Securities Litigation*, 616 F.Supp.3d 192 (E.D.N.Y. 2022), for the proposition that Plaintiff must plead scienter and satisfy Rule 9(b), is misplaced. There, because the plaintiff alleged claims under *both* Section 11 of the 1933 Act *and* under Section 10(b) the Securities and Exchange Act of 1934 (the "1934 Act"), the court found "that the factual pleadings supporting plaintiffs' [1933 Act] claims against the [] defendants *substantially intertwined* with those supporting their [1934 Act] claims," and "concluded that plaintiffs' [1933 Act] claims against the [] defendants sounded in fraud and were thus subject to the scienter requirement of Rule 9(b)." *Id*. at 201. Critically, Plaintiff here *does not* allege claims under the 1934 Act, such that its allegations are "substantially intertwined" with fraud claims. Because Plaintiff's claims are based solely on negligence, Rule 9(b) nor scienter apply.[8]

---

[8] Defendants argue that management's increased FHS holdings cuts against scienter. MTD 20. *First*, scienter is not required. *See supra*. *Second*, insider Longwater profited by $25 million from the IPO. ¶74. *Third*, courts reject a "per se rule that stock purchases negate any inference of scienter," *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, \*8 (D. Del. Feb. 7, 2020),

- 16 -

**B.      Plaintiff Has Pled Actionable Claims Under Section 12(a)(2)**

Section 12(a)(2) of the 1933 Act imposes liability for selling or offering securities by using a prospectus "which includes an untrue statement of a material fact or omits to state a material fact…." *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F.Supp.2d 395, 423 (S.D.N.Y. 2011) (Koeltl, J.) (citing 15 U.S.C. §77l(a)(2)).  Section 12(a)(2) attaches liability to "statutory seller[s]," *i.e.*, those who "(1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'"  *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, 2010 WL 6617866, \*5 (E.D.N.Y. Dec. 23, 2010) (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010)).   The Individual Defendants' act of signing the Registration Statement suffices to establish a claim under Section 12(a)(2).  *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F.Supp.2d 158, 187 (S.D.N.Y. 2003).  Because Plaintiff has proven there is a material misstatement or omission (*see* §III.A), and that the Defendants are statutory sellers, it has established a claim under Section 12(a)(2).[9]

**C.      Defendants' Challenges Are Without Merit**

First, Defendants argue that the misstatements are immaterial because their "after-school tutoring" business accounted for less than 0.4% of revenue at the time of the IPO, resulting in the

----

and often find liability despite purchases.  *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F.Supp.2d 277, 320 (S.D.N.Y. 2013).  *Finally*, Defendants do not provide ***any information*** about how management increased their holdings, which could have been in the form of restricted stock units and options.

[9]      Because Plaintiff's Sections 11 and 12(a)(2) claims are adequately alleged, there is no basis for dismissing Plaintiff's Section 15 claims.  MTD 24; *Cloopen*, 2023 WL 2534599, \*8.

Double Reduction being "immaterial as a matter of law." MTD 10-13. Defendants, however, ignore several crucial allegations. Namely, President Xi's statements at Two Sessions and news in China concerned more than just tutoring. ¶¶62-69. They indicated that President Xi would "***comprehensively*** promote the ***reform*** of education methods" (¶64), focus on the "***socialist orientation***" in running schools (¶63), and that "Education…***must not be led by the profits-first logic***" (¶68). These statements were about transforming the entire for-profit industry. While Defendants claim the statements were just "political sermons" or "bureaucratese" (MTD 14-15), they ignore that President Xi could not have been clearer that he disfavored for-profit private education and, consequently, that industry was in trouble because people defied Xi at their extreme peril.[10]

But even if tutoring was the regulatory focus, Defendants ignore that the reforms impacted FHS's Gaokao tutoring business,[11] which contributed to its revenue much more significantly – over 7.5% in the nine months ending September 30, 2020.[12] Ex. C p.84. That revenue amount is not

---

[10]   Even if an IPO acceleration request is "routine," MTD 21n.6, that does not contradict that here, Defendants sought acceleration because of the imminent impact of regulations on FHS's business.

[11]   *See, e.g.*, https://finance.sina.com.cn/china/2022-12-14/doc-imxwqair6296067.shtml (government shutting-down FHS's Gaokao tutorial school in Chengdu due to Double Reduction).

[12]   Defendants' own statements support that Double Reduction and the Implementation Rules affected the Gaokao tutoring business. ¶¶9, 89; *see also* Ex. I pp.4-6 (the "a lot [s]lower" "approval process for schools' authorization license" relating to "our high school and Gaokao repeater school opening-ups" was "due to the regulation…[about] the promoting private education of PRC"). Defendants' attempts to suggest otherwise (MTD 13n.5) raises an issue of fact. *Taro Pharm.*, 2018 WL 4572987, *6.

immaterial as a matter of law (*S.E.C. v. Sequential Brands Grp., Inc.*, 2021 WL 4482215, *7 (S.D.N.Y. Sept. 30, 2021) (5% materiality threshold)), and, as stated, the regulations also slowed down approvals for additional schools, including Gaokao schools.

Further, the regulations also reduced the number of FHS's tutoring schools from six to three, and cut the number of students by a third. *Compare* Ex. C at 89 (1,541 Gaokao students as of 9/30/2020) and Ex. E at 47 (6 Gaokao school programs as of 12/31/2021) *with* Ex. H at 48 (3 Gaokao schools as of 12/31/2022) and at 49 (1,071 Gaokao students as of 12/31/2022). Thus, FHS's tutoring business was not expanding as planned – it was contracting.[13]

Defendants further claim that the news did not signal anything about the Double Reduction or Implementation Rules. MTD 14. But, as shown throughout, the news and Xi signaled that "***comprehensive reforms***" would affect the entire industry. ¶¶62-69. That news made the statements about FHS's operations, including its expansion plans, false and misleading and created – *at very least* – a risk and an uncertainty that Defendants were required to disclose. *See supra* §III.A.1.

Defendants also imply that this Court cannot hold a company liable for failing to disclose forthcoming legislation. MTD 16. But the Second Circuit has done just that. *Moab Partners*, 2022 WL 17815767, *3.[14]

---

[13]    Defendants' interpretation of Zhang's statements regarding the regulations and expansion (MTD 13, 18) is improper. *Supra* n.3.

[14]    *Banerjee v. Zhangmen Education Inc.*, 2023 WL 2711279 (S.D.N.Y. Mar. 30, 2023), is distinguishable. MTD 15. *First*, factually, *Zhangmen's* IPO occurred in June 2021, after the news of the comprehensive reforms were known in the U.S. *Id*. at *2. *Second*, *Zhangmen*, in its risk disclosures, warned that the Chinese government could take steps as drastic as a total ban on the for

As to Hengshui, Defendants claim that its statements were accurate. MTD 9-10. Yet, they offer no explanation as to why Hengshui believed it needed to take the highly unusual action of publicly disclaiming any connection to FHS's IPO nor authorized FHS to operate using its name. Tellingly, FHS has since removed the Hengshui name from at least nine of its schools, seemingly confirming Hengshui statements. *Compare* Ex. C at 124-25 *with* Ex. H at 50-51 (at least nine schools deleted Hengshui from their name).

Defendants also argue that their risk warnings were adequate. MTD 4-6, 21. However, *all* of the risk warnings use the word "*may*" – meaning that those events *may* happen in the *future*. *See id*. In reality, the risks to the for-profit education industry were *presently* materializing, as shown through the news in China leading up to Two Sessions, and President Xi's Two Sessions comments (¶¶62-69) – rendering the risk warnings meaningless. *Cloopen*, 2023 WL 2534599, *10 (citing *Rombach*, 355 F.3d at 173) ("'[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired'"). There was no doubt that at the time of the IPO, President Xi was speaking out against, and putting regulations in motion that would upend for-profit education. The safe harbor provides no protection to one who warns "there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away." *Rombach*, 355 F.3d at 173. Nor are Defendants aided by generic cautionary language that could have applied to any company. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 105 (2d Cir. 2015); *Moab Partners*,

---

profit industry. *Id*. at *7. No such warnings exist here. *Third*, there were no allegations, as here, of knowledge of an uncertainty to support an Item 5 claim. ¶¶59-61.

2022 WL 17815767, *4 ("generic cautionary language" regarding future regulation insufficient to avoid liability).[15]

Defendants' challenges to the disclosure claims under Item 5 and Item 105 are also without merit. First, Defendants argue Plaintiff has failed to prove "actual knowledge." MTD 23. Although Plaintiff contents that it has established actual knowledge through Zhang, Plaintiff has plead **at least** actual knowledge of **an uncertainty** that existed – surrounding those actions and regulations – such that Defendants were obligated to make additional disclosures in the Registration Statement. *See, e.g.*, ¶¶59-61; *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 96 (2d Cir. 2016) (Item 303 requires disclosure of an uncertainty even if management is unsure of its "likely effect"); *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F.Supp.3d 635, 644 (S.D.N.Y. 2017) (Item 303 required disclosure of law change, despite uncertainty about its "likely effect"). Defendants further argue that Plaintiff has failed to allege that a "trend" – ignoring known uncertainties – was material, as required by Item 5 and Item 105. MTD 24. But, as shown above, Plaintiff has established materiality, and an uncertainty. *See supra* §III.A.2.

Defendants also argue that Plaintiff's claims are: (i) "time-barred" because certain news articles, based in **China**, should have caused the Plaintiff to know of "its claims as soon as the Prospectus became effective in March 2021"; and (ii) mooted because Defendants have no duty to disclose information in the "public domain." *See, e.g.*, MTD 17, 24. First, this argument is inconsistent with the Defendants' other arguments that reject the notion that anything was knowable

---

[15]    *Zhangmen* is inapposite. There the court found that defendants "are not required to speculate" on unknown, forthcoming regulations. 2023 WL 2711279, *9. But here, Plaintiff has alleged that the Defendants did not need to speculate. The for-profit education industry was being transformed, and they merely warned that it was some remote possibility. ¶¶62-69.

before the IPO.  *See, e.g.*, MTD 12.  But more importantly, recent Second Circuit authority holds that United States-based investors do not have access to obtain information abroad – especially *in China*.[16]  *See Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 28 (2d Cir. 2020) (finding "much of the information [within short-seller report], including SAIC filings of multiple entities in a different language and Chinese court judgments, *was not readily accessible* to investors"); *see also Horowitz v. Sunlands Tech. Grp.*, 2022 WL 4392401, *6 (E.D.N.Y. Sept. 21, 2022) (publication in *The Beijing News* was akin to a "specialty publication," that is insufficient to put investors on notice of a securities violation); *In re Fuwei Films Sec. Litig.*, 634 F.Supp.2d 419, 438 (S.D.N.Y. 2009) (finding that "publication of three newspaper articles – in Chinese – does not transform the information contained within the articles into 'matters of general public knowledge' that may properly be imputed to [U.S.] stockholders").

Additionally, the Registration Statement instructed that investors "must not rely on any unauthorized information or representations" and that no one was "authorized to give any information or to represent anything not contained in this prospectus."  ¶97; *In re Facebook, Inc.*, 986 F.Supp.2d 487, 522 (S.D.N.Y. 2013) ("A reasonable investor will not be charged to regard press reports as a reliable source of information after having read such advice.").  Thus FHS specifically instructed investors not to look elsewhere, including the news.

Finally, Defendants attempt to argue that "the forward-looking statements Plaintiff challenges have not turned out to be false," that they are protected by the bespeaks caution doctrine, or that they are otherwise inactionable puffery.  MTD 22-23.  First, by speaking, Defendants were required to speak accurately, and their omissions were not cured by the generic half-true forward

---

[16]    True for both Chinese news articles (MTD 17), and the broadcasts of Two Sessions (MTD 20).

looking statements Defendants made, "which did not reveal the information necessary for the investing public to make a proper assessment of the alleged risks." *Moab Partners*, 2022 WL 17815767, \*4. Second, Defendants' risk warnings were insufficient. *See supra*. Third, Defendants' statements are not puffery because they are not "so vague, broad, and non-specific that a reasonable investor would not rely on it, thereby rendering it immaterial as a matter of law." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F.Supp.2d 512, 572 (S.D.N.Y. 2011).

## IV.    CONCLUSION

For the reasons above, Plaintiff respectfully requests that the Court deny Defendants' motion. If the Court, however, dismisses all or part of the SAC, Plaintiff respectfully requests leave to amend, which should be freely given. *See* Fed. R. Civ. P. 15(a)(2); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("[w]ithout the benefit of a ruling, many a plaintiff will not…be in a position to weigh the practicality and possible means of curing specific deficiencies").

DATED:  August 21, 2023                    ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            WILLIAM J. GEDDISH


                                            */s/ Samuel H. Rudman*
                                            SAMUEL H. RUDMAN

                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            srudman@rgrdlaw.com
                                            wgeddish@rgrdlaw.com

- 23 -

ABRAHAM, FRUCHTER & TWERSKY, LLP
JACK G. FRUCHTER
LAWRENCE D. LEVIT
450 Seventh Avenue, 38th Floor
New York, NY  10123
Telephone:  212/279-5050
212/279-3655 (fax)
jfruchter@aftlaw.com
llevit@aftlaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF WORD COUNT**

Pursuant to Judge Koeltl's Individual Practices, I hereby certify that this memorandum of law contains 6,966 words and that this brief complies with the formatting rules set forth in Judge Koeltl's Individual Practices.

/s/ Samuel H. Rudman
SAMUEL H. RUDMAN