**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAGAN INVESTMENTS LLC, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. 1:22-cv-03831-JGK |
| vs. | |
| FIRST HIGH-SCHOOL EDUCATION GROUP CO., LTD., SHAOWEI ZHANG, LIDONG ZHU, GUANGZHOU ZHAO, YUANLIN HU, LONGWATER TOPCO B.V., EQT MID MARKET ASIA III LIMITED PARTNERSHIP, EQT MID MARKET ASIA III GP B.V., EQT FUND MANAGEMENT S.À R.L., COLLEEN A. DE VRIES, COGENCY GLOBAL INC., THE BENCHMARK COMPANY LLC, VALUABLE CAPITAL GROUP LIMITED, TFI SECURITIES AND FUTURES LIMITED, AMTD GLOBAL MARKETS LIMITED, MAXIM GROUP LLC, BOUSTEAD SECURITIES, LLC, FUTU INC., US TIGER SECURITIES, INC. and FOSUN HANI SECURITIES LIMITED, | |
| Defendants. | |

**REPLY IN SUPPORT OF
DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................... 1

II.  ARGUMENT ...................................................................................................................... 1

    A.  The Opposition Fails to Tease Contemporaneous Falsity out of the SAC. ............ 1

    1.  Pre-IPO Political Speeches Revealed Nothing. ....................................................... 1

    2.  The Pre-IPO News Reports Were Public Information. ............................................. 3

    3.  Plaintiff Fails to Establish Materiality. ................................................................... 5

    4.  The Opposition Only Confirms That Defendants' Disclosures About Hengshui Were Accurate. ................................................................................ 6

    B.  Plaintiff's Items 303 and 105 Claims Also Fail .................................................... 6

    C.  The Complaint Fails to Plead Scienter under Rule 9(b) ........................................ 7

    D.  Plaintiff's Claims Are Time-Barred ....................................................................... 9

III.  CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banerjee v. Zhangmen Educ. Inc.*,
2023 WL 2711279 (S.D.N.Y. Mar. 30, 2023) ...................................................................2, 3, 7

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)...................................................................................4

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
616 F. Supp. 3d 192 (E.D.N.Y. 2022) ..................................................................................9

*In re Fuwei Films Sec. Litig.*,
634 F.Supp.2d 419 (S.D.N.Y. 2009)...................................................................................3, 4

*Garnett v. RLX Tech. Inc.*,
632 F. Supp. 3d 574 (S.D.N.Y. 2022)..................................................................................4, 5

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ..................................................................................9

*Horowitz v. Sunlands Tech. Grp.*,
2022 WL 4392401 (E.D.N.Y. Sept. 21, 2022) ......................................................................3

*Hutchison v. Deutsche Bank Sec. Inc.*,
647 F.3d 479 (2d Cir. 2011)...................................................................................................6

*Johnson v. NYFIX, Inc.*,
399 F. Supp. 2d 105 (D. Conn. 2005)....................................................................................9

*In re Lululemon Secs. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014).....................................................................................6

*Police Fire Retirement System v. Safenet*,
645 F. Supp. 2d 210 (S.D.N.Y. 2009)...................................................................................9

*In re Qudian Sec. Litig.*,
2019 WL 4735376 (S.D.N.Y., 2019)......................................................................................4

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004).................................................................................................7, 9

## I.    INTRODUCTION

Instead of addressing the fundamental lack of facts supporting falsity, Plaintiff continues to rely on unwarranted inferences from political speeches. Opp. at 3-4. This only illustrates its clairvoyance-based falsity theory.

Plaintiff also concedes that FHS's CEO was merely "eligible to attend Two Sessions," meaning it has not alleged facts sufficient to show contemporaneous insider knowledge. *Id*. at 5.

Finally, Plaintiff fails to dispute that its claims are time-barred. MTD at 24. The SAC should be dismissed.

## II.    ARGUMENT

### A.    The Opposition Fails to Tease Contemporaneous Falsity out of the SAC.

#### 1.    Pre-IPO Political Speeches Revealed Nothing.

Plaintiff claims that Defendants "miss the point" by arguing that "they could not have known how the regulations would *impact* FHS." Opp. at 3 (emphasis added). But this "impact" argument sidesteps the Motion's actual point: that Plaintiff has failed to plead facts sufficient to show that Defendants were aware of the forthcoming regulatory overhaul in the first place. *See* MTD at 10-18. Here, Plaintiff failed to explain how ambiguous political sermons, which at best indicate a desire to better regulate the private education sector, could have signaled a "crackdown" that eradiated significant portions of the industry. *See id*. at 11-15, *cf*. SAC ¶¶ 50-51, 63-68.

Plaintiff attempts to imbue meaning to these political speeches using soundbite "quotations" sandwiched between self-serving conjectures. For instance, Plaintiff contends that news reports indicated the "imminent imposition of 'comprehensive reform' that would severely impact the for-profit education industry." Opp. at 5. But the only (miscited) report containing the phrase "comprehensive reform" is a *post*-IPO article, where the *author*, not President Xi, talks

about China's competitive educational culture, then opines that "comprehensive reforms in educational system will uphold the sustainable growth within the society." SAC ¶ 77; Ex. O.

Meanwhile, the only *pre*-IPO report containing the words "reform" and "comprehensive" is a speech by Xi in which he notes the "need to comprehensively promote the reform of education methods." SAC ¶ 64; Ex. P, at 4. How this statement could possibly indicate the contours of an upcoming regulatory overhaul is unclear. Of course, no contemporaneous falsity exists where government communications "merely show an indication among [Chinese regulators] toward heightened regulation, but left unclear the timing and form of such regulations—or whether, within the Chinese national government, the [alternative] approach [of more drastic regulation] would even carry the day." *Banerjee v. Zhangmen Educ. Inc.*, 2023 WL 2711279, at \*19 (S.D.N.Y. Mar. 30, 2023) ("*Zhangmen*").

Plaintiff's attempts to distinguish *Zhangmen* only accentuate the problems in its case.

First, Plaintiff argues that Zhangmen's June 2021 IPO was "after the news of the comprehensive reforms were known in the U.S." Opp. fn. 14. But Plaintiff points to nothing in the *Zhangmen* decision suggesting that widespread knowledge of the upcoming crackdown was the basis for dismissal. Nor does Plaintiff bother to explain how such knowledge proliferated in the three months between FHS's and Zhangmen's IPOs.

Next, Plaintiff argues that Zhangmen warned investors about the possibility of drastic measures, but "[n]o such warnings exist here." *Id*. Plaintiff ignores FHS's risk disclosures, which specifically cautioned investors about the evolving regulatory regime that might "impose restrictions" leading to "material disruption of our operation." MTD, at 4-6. FHS also warned investors about the potential impact of the then-unimplemented Draft Rules, including threats to FHS's corporate structure. *Id*.  Like Zhangmen, FHS "adequately disclosed the possibility of

stricter regulations" and was "not required to speculate or foresee coming regulation or its potential effect on the company." *Zhangmen,* at \*10.[1]

Presently, another hindsight suit against a Chinese **after-school** tutoring company is also poised for dismissal. Ex. Q. On July 20, a Magistrate recommended dimissing *Wong vs. 17 Education*, finding no false statements where 17 Education warned about "uncertainties exist[ing] in relation to new legislation … which may materially and adversely affect [the company's] business ... ." *Id*. at 19. FHS gave identical risk disclosures. *Cf.* MTD, at 5. Also like here, "Plaintiffs have not alleged facts that would render the expected regulatory changes a foregone conclusion." *Id.* at 20.

### 2.    The Pre-IPO News Reports Were Public Information.

Plaintiff argues that the pre-IPO news reports are not considered "public" for securities law purpose because they were "overseas news." Opp. at 4. Plaintiff cites three cases in which information in obscure sources did not create public knowledge. *Id*. at 22. *Lea v. TAL Educ. Grp.* concerned Chinese government and court filings that are non-public. 837 F. App'x 20, 28 (2d Cir. 2020). The other two cases concern articles written in Chinese and published in local or specialized newspapers. *See Horowitz v. Sunlands Tech. Grp.,* 2022 WL 4392401, \*6 (E.D.N.Y. Sept. 21, 2022) (finding that publication in *The Beijing News*, a "specialty publication," was insufficient for broad-based knowledge); *In re Fuwei Films Sec. Litig.*, 634 F.Supp.2d 419, 438

---

[1] Plaintiff also argues that *Zhangmen* is distinguishable because there was no actual knowledge allegation. Opp. fn. 14. Setting aside that the "knowledge" allegations here are pure speculation, alleging "knowledge" only subjects the SAC to a **higher** pleading standard than in *Zhangmen*. MTD, at 19-21.

(S.D.N.Y. 2009) (declining to find general knowledge based on three Chinese-language articles from specialized economics newspapers).

Importantly, all three cases involved ***defendants*** finding newspaper articles to "excuse [themselves], as a matter of law, from their respective duties to disclose the allegedly misleading information." *In re Fuwei Films*, 634 F. Supp. 2d, at 438. Here, by contrast, it is ***Plaintiff*** who cites mainstream newspaper articles, broadcast to the world, written in English, to ***establish*** contemporaneous falsity.

For instance, a pre-IPO article reporting Xi's speech allegedly emphasizing "the non-profit nature of education" was published online by Xinhua Net—"China's official state news agency." SAC ¶ 63; Ex. R. Similarly, the "report" from which Plaintiff snipped the phrase "comprehensive reform," was published by CGTN, also a "state-run news organization." SAC ¶64; Ex. P. Not only were both ***written in English***, the second article was even simultaneously published on Business Wire. Ex. S. It is thus unclear how FHS could have concealed information ***Plaintiff itself inferred*** from these public, English-language articles.

Moreover, effectively all pre-IPO statements cited were made publicly by Xi or government functionaries. These governmental statements are "by nature, ***public*** information." *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 607 (S.D.N.Y. 2022) (emphasis original). And "information regarding the regulatory actions of foreign governments [is deemed] publicly known to investors in the United States where the information was equally available to investors and the defendant issuer, even if not necessarily widely circulated." *Id*. at 609; *see also In re Qudian Sec. Litig.*, 2019 WL 4735376, at \*6  (S.D.N.Y., 2019) (finding general knowledge where the nondisclosed information was available in "several newspaper articles"); *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 255 (S.D.N.Y. 2019) (finding general knowledge

where the news articles, though "in highly specialized or Asian publications," "were published in the English language, and were equally available to … Plaintiffs").

### 3. Plaintiff Fails to Establish Materiality.

Plaintiff did not dispute that the Double Reduction is immaterial because it impacted only FHS's after-school tutoring business, accounting for 0.4% of its revenue. Rather, Plaintiff attempts to recharacterize its allegations, arguing that the pre-IPO reports signaled "more than just tutoring" reforms, but rather a "Xi-directed up-ending of the for-profit education industry." Opp. at 18. However, even setting aside the immateriality of the after-school tutoring business the regulations *actually* targeted, the statements were too general and bureaucratic to signal anything. *Supra* § II.A.1. Indeed, even assuming they did, the fact that they were publicly available also made them immaterial. *Garnett*, 632 F. Supp. 3d 574, 607.

Plaintiff next contends that "even if tutoring was the regulatory focus" of the Double Reduction, it was still material because it impacted FHS's Gaokao tutoring business, which accounted for 7.5% of FHS's revenue. Opp. at 18. However, even the official name of the Double Reduction makes clear that it was designed to "Further Alleviat[e] the Burden of Homework and After-School Tutoring for Students *in Compulsory Education*." MTD at 6 (emphasis added). Compulsory education covers only K-9, while Gaokao repeater tutoring is for *high school graduates*—who are by definition not covered by the Double Reduction.[2] As FHS's press releases thus stated, the Double Reduction had no "negative impact on the development of the Company's high schools and Gaokao repeaters' tutorial schools." MTD, fn. 5.

In a last-ditch effort to salvage materiality, Plaintiff argues that a 91% decrease in FHS's stock price supports materiality. Opp. at 13-14. Plaintiff cites no caselaw, only a 1999 "SEC

---

[2] "Gaokao" is the colloquial name for the "National College Entrance Examination." *See* Gaokao - Wikipedia.

Staff Accounting Bulletin." *Id*. But as the Second Circuit has cautioned—citing the same

bulletin, "[c]onsideration of potential market reaction to disclosure of a misstatement is by itself

too blunt an instrument to be depended on in considering whether a fact is material," as other

things "could have caused [the company's] stock price to drop." *Hutchison v. Deutsche Bank*

*Sec. Inc.*, 647 F.3d 479, 491 (2d Cir. 2011). Here, there isn't even a predicate "disclosure of a

misstatement," and absent "contemporaneous falsity," Plaintiff's wholesale reliance on a steady

stock-price decline only reveals that this is a classic case of "fraud by hindsight." *In re*

*Lululemon Secs. Litig.*, 14 F. Supp. 3d 553, 586 (S.D.N.Y. 2014).

> **4.    The Opposition Only Confirms That Defendants' Disclosures About Hengshui Were Accurate.**

Plaintiff claims that Defendants "avoid addressing Hengshui's disavowal of its

connection to the IPO, and do not deny Hengshui's public statements." Opp. at 4. But as the

Motion made clear, Hengshui never "disavowed" any statement FHS made, and the Opposition

does not now bother to explain how Hengshui's clarification that it had no role in the IPO and

had not authorized FHS to use its name renders any Prospectus statement false. *Id*. at 7, 10; *cf.*

SAC ¶¶ 87, 99. Indeed, all the Prospectus stated was that FHS has a "cooperative relationship"

with Hengshui in developing school protocols and training teachers. MTD, at 9-10. The

Prospectus even specifically warned that the relationship was not set in stone, could be

terminated by Hengshui at any time, and that it may need to remove "Hengshui" from its

schools' names (which it never claimed had been licensed). *Id*. at 18-19. In short, Hengshui

never contradicted the Prospectus. Sans false statement, there is nothing to deny.

**B.    Plaintiff's Items 303 and 105 Claims Also Fail**

Plaintiff argues that even if it did not plead actual knowledge of an impending

crackdown, it "has plead ***at least*** actual knowledge of ***an uncertainty*** that existed." Opp. at 21.

But the cited caselaw states only that item 303 requires disclosure of known changes in the law, even if the "likely effect" is still uncertain. *Id*. Thus, it appears that Plaintiff has again confused the impact of a known change with knowing the change ***itself***. *Supra* § II.A.1. As discussed above, the question at issue is whether the regulatory crackdown was, or could have been, anticipated in the first place, which Plaintiff has utterly failed to establish. *Id*. Indeed, the only regulatory "uncertainty" that existed as of the IPO was whether and how the Draft Rules would be adopted, which uncertainty FHS disclosed in detail. MTD, at 5-6, 21-22.

Finally, items 303 and 105 claims should also be dismissed because "they are mere redundant restatements of otherwise-failed Section 11 complaints due to the clear overlap in standards." *Zhangmen*, at 25.

**C.    The Complaint Fails to Plead Scienter under Rule 9(b)**

Plaintiff's attempt to exempt itself from having to plead scienter fails for many reasons.

***First***, Plaintiff contends that baldly stating its claim "does not sound in fraud" is sufficient to obviate scienter. Opp. at 14. Yet Plaintiff's leading case, *Silvercreek Mgmt. Inc. v. Citigroup, Inc.*, exempted a Section 11 claim from Rule 9(b) not just because the pleading "expressly disclaims allegations of fraud," but also because it "affirmatively alleges negligence," including specific allegations about how defendants failed to "ma[k]e reasonable investigations." 248 F.Supp.3d 428, 448 (S.D.N.Y. 2017). Here, however, the SAC's "wording and imputations [] are classically associated with fraud," including repeated allegations that the Prospectus contained "untrue statements of material facts," and that "materially false and misleading statements" were issued. *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) ("*Rombach*"); *cf.* SAC ¶¶ 8, 73, 96, 106, 124 (same allegations). As such, Plaintiff's "nominal efforts [to disclaim fraud] are unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims levied at the Prospectus." *Id*.

*Second*, Plaintiff's allegations about "knowledge" transparently suggest fraud. *See e.g.*, SAC ¶¶ 59-62 (alleging that FHS's CEO was "undoubtedly aware" of upcoming regulations); ¶¶ 71-72; Opp. at 1-2, fn. 10 (alleging that FHS accelerated the IPO to get ahead of the known, impending crackdown).

Plaintiff argues that the "knowledge" allegations do not necessarily imply fraud, as they are consistent with negligence or item 303 claims. Opp. 14-15. This is contradicted by Plaintiff's own caselaw. In *Wallace v. IntraLinks*, the court found that "knowledge" allegations for Exchange Act claims did not trigger Rule 9(b) for concurrent Section 11 claims because plaintiffs there "***properly separated*** their Section 10(b) allegations based on fraud, from their Section 11 and 12(a)(2) allegations based on negligence." 2013 WL 1907685, *12 (S.D.N.Y. May 8, 2013) (emphasis added). The same is true for *Citiline Holdings, Inc. v. iStar Fin. Inc.*, where the court found the allegations against underwriters sounded in negligence because the complaint "carefully avoids [fraud-like] allegations." 701 F. Supp. 2d 506, 513 (S.D.N.Y. 2010). The pleading here does the opposite, alleging ***actual awareness*** of undisclosed information while conclusorily alleging negligence without underlying facts. *See e.g.*, SAC ¶¶ 8, 12, 96.

*Third*, Plaintiff argues that even if Rule 9(b) applies, Plaintiff is not required to plead scienter. Opp. at 15-16. Plaintiff primarily relies on *In re Sanofi Sec. Litig.*, which, when addressing section 10(b) and 20(a) claims, states in a footnote that:

> Claims that sound in fraud must satisfy the heightened pleading requirements of Rule 9(b), but that Rule does not add substantive elements such as scienter to any claim.

2015 WL 365702, n.8 (S.D.N.Y. Jan. 28, 2015).

This statement is neither precedential nor persuasive. A closer reading of the cases cited in the footnote reveal that they only recited the non-scienter standards for Securities Act claims generally, ***before*** discussing scenarios where such claim "sound[s] in fraud." *See City of Pontiac*

*Policemen's & Firemen's Ret. Sys.,* 752 F.3d at 182-183 (stating that "Plaintiffs need not allege scienter, reliance, or causation" for section 11 ***before*** analyzing whether "the claims sound in fraud"); *Special Situations Fund III QP, L.P.*, 33 F.Supp.3d 401, 440 (reciting the standard for section 18 claims ***before*** discussing the applicability of Rule 9(b)). *Rombach* instructs that Section 11 claims sounding in fraud ***are*** subject to Rule 9(b). 355 F.3d 164, at 170. This test requires that a fraud claim plead the defendant's state of mind. *See* Fed. R. Civ. P. 9(b).

Following *Rombach*, numerous cases have required scienter for Section 11 claims sounding in fraud. *See, e.g., In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 394 (E.D.N.Y. 2013) (plaintiff "failed to comply with Rule 9(b) with regard to the Section 11 claim [] because it expressly disclaim[ed] all allegations of scienter"); *Police Fire Retirement System v. Safenet,* 645 F. Supp. 2d 210, 241 (S.D.N.Y. 2009) ("As the Section 11 claims are based in fraud, Plaintiffs must allege their ***fraudulent intent*** with more specificity.") (emphasis added); *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 122 (D. Conn. 2005) (plaintiffs must "adequately allege that the defendants knew or were reckless in not knowing" falsity to state a Section 11 claim).

As another court recently held after revisiting precedents in this Circuit, "courts in this circuit have consistently applied *Rombach* to dismiss Securities Act claims that sound in fraud but fail to plead scienter." *In re Chembio Diagnostics, Inc. Sec. Litig.*, 616 F. Supp. 3d 192, 203-204 (E.D.N.Y. 2022).

But the Court need not address these issues, as Plaintiff's claims fail on multiple levels, and may be dismissed on falsity, materiality, and statute of limitations grounds before reaching Rule 9(b).

### D.    Plaintiff's Claims Are Time-Barred

Plaintiff did not dispute that Plaintiff knew or should have known of its claims as soon as the Prospectus became effective in March 2021, but waited until May 2022 to file, exceeding the

1-year limitations statute. *See* Opp. at 21. Plaintiff contends that the statute of limitations argument is "inconsistent with the Defendants' other arguments that reject the notion that anything was knowable before the IPO." *Id*. But either the crackdown *was* knowable from Plaintiff's articles as alleged (in which case the SAC is time barred), or it wasn't (in which case there is no falsity). Here, it is Plaintiff who has failed to reconcile the allegation that pre-IPO reports signaled the crackdown, with its position that the same information could not have placed Plaintiff on notice. MTD, at 24. Plaintiff should not be allowed to have its cake and eat it too.

### III.    CONCLUSION

For the reasons stated above, the Court should dismiss the SAC with prejudice.

Respectfully Submitted,

Dated: September 11, 2023                          **AFN LAW PLLC**

By: _____

Angus F. Ni
Serena Y. Yang
41 Madison Ave, 31st Floor,
New York, NY 10010
(646) 453-7294
angus@afnlegal.com

*Attorney for Defendants First High-School
Education Croup Co., Ltd.*

**KIRKLAND & ELLIS LLP**

By: */s/ Matthew Solum*
Matthew Solum, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

msolum@kirkland.com

*Attorney for the Underwriter Defendants*

**K&L GATES LLP**

By: /s/ *Joanna A. Diakos*
Joanna A. Diakos, Esq.
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 536-3900
Fax: (212) 536-3901
joanna.diakos@klgates.com

*Attorneys for Defendants Cogency Global Inc., and Colleen A. DeVries*

-11-

## CERTIFICATE OF FORMATTING COMPLIANCE

The undersigned certifies that this brief complies with the Court's formatting rules, requiring all text to be double spaced.  This brief contains 2,799 words.

Dated: September 11, 2023                                    **AFN LAW PLLC**

By: _____

Angus F. Ni
Serena Y. Yang
41 Madison Ave, 31st Floor,
New York, NY 10010
(646) 453-7294
angus@afnlegal.com

*Attorney for Defendants First High-School
Education Croup Co., Ltd.*

-12-