```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────
DAGAN INVESTMENTS, LLC,

                    Plaintiff,            22-cv-3831 (JGK)

       - against -                        MEMORANDUM OPINION AND
                                          ORDER
FIRST HIGH-SCHOOL EDUCATION GROUP
CO. LTD., ET AL.,

                    Defendants.
────────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

This case is a securities action brought on behalf of a class of investors who purchased or acquired American Depository Shares ("ADSs") of First High-School Education Group Co. Ltd., ("FHS" or the "Company") traceable to a registration statement and prospectus (together, the "Registration Statement") issued in connection with the Company's March 10, 2021 initial public offering ("IPO" or the "Offering"). The lead plaintiff, Dagan Investments LLC, brought claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"). 15 U.S.C. §§ 77k, 77l(a)(2), 77o. The defendants now move to dismiss the Second Amended Complaint, ECF No. 52 ("SAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is **granted**.

**I.**

Unless otherwise noted, the following facts are taken from the Second Amended Complaint and are accepted as true for the purposes of deciding this motion.

FHS operates private high schools and middle schools in Western China and provides for-profit tutoring services. SAC ¶ 19. By December 31, 2019, the Company had become the "largest operator of private high schools in Western China and the third largest operator in all of China in terms of student enrollment." Id. ¶ 42. On January 13, 2021, FHS filed a draft registration statement on Form F-1 with the Securities and Exchange Commission ("SEC") in anticipation of its IPO. Id. ¶ 53. The draft was revised several times in response to certain inquiries from the SEC. Id. ¶ 70.

Meanwhile, beginning March 4, 2021, the Chinese government held its first 2021 "Two Sessions" meeting.[1] Id. ¶¶ 4, 58. At the meeting, Chinese government officials "discussed [and] proposed . . . stringent regulations governing the educational industry." Id. ¶ 62. Notably, President Xi Jinping "sp[oke] out on his contempt for the for-profit education industry, and call[ed] for a new wave of 'comprehensive reforms' to clamp down on the

---

[1] "Two Sessions" is an annual plenary meeting of China's advisory body, the National People's Congress, and China's parliament, the Chinese People's Political Consultative Conference. The event is led by China's president and often results in major policy announcements. See Inst. for China-America Stud., China's Two Sessions Meeting, Issue Brief (Mar. 21, 2023), https://chinaus-icas.org/research/chinas-two-sessions-meeting/.

industry's practices . . . ." Id. ¶ 5. Between March 6 and March 9, 2021, various Chinese news outlets published articles highlighting the government's discussions of an "impending crack-down on the for-profit private education and tutoring industry . . . ." Id. ¶¶ 63-69, 71.

As the Two Sessions meetings continued, FHS sent a letter to the SEC on March 8, 2021, "seeking to have the effectiveness of [the Registration Statement] accelerated." Id. ¶ 71. The SEC declared the Registration Statement effective on March 10, 2021. Id. ¶ 73. On the following day, March 11, 2021, FHS submitted its prospectus on Form 424B4, which incorporated and formed part of the Registration Statement. Id. FHS then launched its IPO, during which it sold 7.5 million American Depository Shares at $10 per ADS. Id. ¶ 74. The IPO generated $75 million in gross offering proceeds. Id.

On July 23, 2021, the Chinese government "unveiled a sweeping overhaul of its education sector" which "effectively ended any potential growth in the for-profit tutoring and education sector . . . ." Id. ¶ 84. On April 5, 2022, FHS announced that it had received a notice from the New York Stock Exchange stating that the Company had fallen out of compliance with the Exchange's listing requirements. Id. ¶ 93. By May 10, 2022, the Company's ADSs closed below $1 per ADS, more than 90%

below the price at which the ADSs were sold to the public one year before. Id. ¶ 95.

The plaintiffs, citing various news reports and public comments by Chinese government officials, now contend that the defendants knew and should have disclosed that these adverse regulations were imminent. Id. ¶¶ 6-9, 58-69. In particular, the plaintiffs allege that the Registration Statement was "affirmatively and materially misleading" because it failed to disclose that the Chinese government would issue regulations that would effectively undermine FHS's "student enrollment and growth potential." Id. ¶ 9.

## II.

### A. Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).[2] A complaint should not be dismissed if the plaintiff

---

[2] Unless otherwise noted, this Memorandum Opinion & Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

4

has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While factual allegations should be construed in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss a complaint, the Court may consider documents attached to or referenced in the complaint, documents that the plaintiff either possessed or knew about and relied on in bringing the lawsuit, or matters of which judicial notice may be taken. Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). The Court may take judicial notice of public disclosures that must be filed with the SEC and documents that both "bear on the adequacy" of SEC disclosures and are "public disclosure documents required by law." Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991).

In this case, the Court considers the full Registration Statement because it is both integral to the SAC and subject to judicial notice. See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir. 1991) ("In

5

considering whether [the] complaint states a claim under . . . Section 11, we examine the prospectus together with the allegations contained on the face of the complaint."); In re Bioscrip, Inc. Sec. Litig., No. 13-cv-6922, 2015 WL 3540736, at *5 (S.D.N.Y. June 5, 2015) ("[W]here a plaintiff's claims . . . are based upon alleged misrepresentations and omissions contained in the prospectuses and other offering materials, those documents are integral to the complaint . . . .").

**B. Sections 11, 12(a)(2), and 15 of the Securities Act**

Sections 11 and 12(a)(2) of the Securities Act impose liability on "certain participants in a registered securities offering when the publicly filed documents used during the offering contain material misstatements or omissions." In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 358 (2d Cir. 2010). Section 11 applies to registration statements, and Section 12(a)(2) applies to prospectuses and oral communications. 15 U.S.C. §§ 77k(a), 77l(a)(2). Section 15 creates liability for individuals or entities that "control[] any person liable" under Sections 11 or 12. 15 U.S.C. § 77o. Accordingly, the success of a plaintiff's Section 15 claim depends in part on the plaintiff's ability to establish a primary violation under Sections 11 or 12(a)(2).

6

**III.**

The defendants argue that the SAC does not plausibly allege a material misstatement or omission. The defendants also argue that, even if the plaintiffs' pleadings were sufficient, the plaintiffs' securities claims are barred by the statute of limitations.[3] The Court addresses these arguments in turn.[4]

**A. Insufficient Pleadings**

Section 11 of the Securities Act provides that any signatory to a registration statement, director of the issuer, or underwriter with respect to such securities may be held liable to purchasers of registered securities if the registration statement contains "an untrue statement of a material fact or omit[s] . . . a material fact required to be stated therein or necessary to make the statements therein not misleading . . . ." 15 U.S.C. § 77k(a). Similarly, Section 12(a)(2) prohibits misleading statements or unlawful omissions of material fact and creates liability for those who effectuate

---

[3] A court may grant a motion to dismiss based on an affirmative defense where "the complaint itself establishes the circumstances required as a predicate to a finding that the affirmative defense applies." In re Sept. 11 Prop. Damage & Bus. Loss Litig., 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007). "[B]ecause the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." Fargas v. Cincinnati Mach., LLC, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013).

[4] The defendants also argue that the plaintiffs' allegations sound in fraud and are thereby subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and they argue that the plaintiffs have failed to allege scienter. Defs.' Mot. 19-21, ECF No. 55. However, as the defendants concede, the Court need not reach this alternative argument if the plaintiffs' claims are otherwise dismissed. Defs.' Reply 8-9, ECF No. 58.

7

the sale of securities "by means of a prospectus or oral communication." 15 U.S.C. § 77l(a)(2).

As such, "two issues are central" to claims under Sections 11 and 12(a)(2): (1) the existence of a misstatement or omission; and (2) materiality. In re Morgan Stanley, 592 F.3d at 360; see also Banerjee v. Zhangmen Educ. Inc., No. 21-cv-9634, 2023 WL 2711279, at *5 (S.D.N.Y. Mar. 30, 2023).

### i. The Existence of an Omission or Misstatement

The SAC fails to allege plausibly that the Registration Statement contained actionable omissions with respect to the relevant Chinese regulations. An omission is actionable "only when the [defendant] is subject to a duty to disclose the omitted facts." In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993).

The plaintiffs initially allege that the defendants "failed to warn investors that the new regulations following the Two Sessions were far more severe than represented and posed a material adverse threat to the Company and its business." SAC ¶ 10. However, at the time that the Registration Statement was published, the defendants had no duty to disclose the imminent regulations and their effect on the Company's business. This is because the adverse regulations were announced after the

Registration Statement became effective.[5] See id. ¶¶ 73, 84. Indeed, the defendants cannot be liable for failing to predict with certitude what changes Chinese lawmakers would make to the relevant regulations. See Haping v. 17 Educ., No. 22-cv-9843, 2023 U.S. Dist. LEXIS 129268, at *31 (S.D.N.Y. July 20, 2023) (recommending dismissal of the Section 11 claim because "the relevant risk (i.e., regulatory changes) had not yet occurred at the time of the IPO Registration Statement[.]"), report and recommendation adopted, No. 22-cv-9843, slip op. at 1 (S.D.N.Y. Nov. 8, 2023). Additionally, the defendants did, in fact, disclose the risks that were known to them at that time. The "Risk Factors" section of the Registration Statement plainly states: "uncertainties exist in relation to new legislation or proposed changes in [China's] regulatory requirements regarding private education, which may materially and adversely affect [FHS's] business, financial condition and results of operation." SAC ¶ 111.

The plaintiffs also argue that the Registration Statement failed to disclose "trend information" required by Form 20-F and Item 303 of SEC Regulation S-K, id. ¶¶ 107-08, as well as "risk factors" required by Item 105 of SEC Regulation S-K, id. ¶ 109.

---

[5] As the plaintiffs concede, the Chinese regulation affecting private tutoring -- which accounted for only about 0.4% of FHS's revenue at the time of the IPO -- was announced on July 23, 2021, and the regulation affecting schools became effective even later, on September 1, 2021. Pls.' Opp'n 7-8, ECF No. 57; see also Defs.' Mot. 2.

9

As with the regulations, at the time that the Registration Statement was published, the defendants had no duty to disclose any additional "trend information" or "risk factors." The Chinese government had not yet taken any action, so there were no "trends" or "risks" to disclose. See, e.g., Willard v. UP Fintech Holding Ltd., 527 F. Supp. 3d 609, 619 (S.D.N.Y. 2021) ("Item 303 . . . imposes a disclosure duty [only] where a trend, demand, commitment, event or uncertainty is . . . presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operations."). Moreover, the defendants disclosed the trends and risk factors that were known to them at that time. See SAC ¶ 111 ("[U]ncertainties exist in relation to new legislation or proposed changes in [China's] regulatory requirements regarding private education, which may materially and adversely affect [FHS's] business, financial condition and results of operation."). Therefore, the Registration Statement does not contain actionable omissions -- about the regulations that were not yet enacted or about "trend information" or "risk factors."

    The SAC also fails to allege plausibly that the Registration Statement contained actionable misstatements. In offering materials, parties generally have no independent duty to disclose all material nonpublic information, but once a party "choos[es] to speak," it has a "duty to be both accurate and

complete." Caiola v. Citibank, N.A., 295 F.3d 312, 331 (2d Cir. 2002).

The plaintiffs primarily point to FHS's statements in the Registration Statement that speak to the Company's strength, growth, and profitability as being driven by "favorable government policies." Pls.' Opp'n 10 (citing SAC ¶¶ 98-104), ECF No. 57. The plaintiffs argue that these representations "were rendered false or misleading" because the defendants failed to disclose that, at the time of the IPO, the Chinese government was considering imposing new regulations on private, for-profit education. Id. The plaintiffs contend that the regulations "were more severe than represented" in the Registration Statement because FHS failed to disclose that the regulations "threatened the success, and even the sustainability [of FHS]." Id.

However, in the Registration Statement, the defendants explicitly discuss the draft rules issued by the Ministry of Justice ("MOJ Draft") and caution that "there is uncertainty" regarding whether the MOJ Draft would be enacted in its current form or if it would even be enacted at all. Ni Decl., Exh. C at 22, ECF No. 56-3. The Registration Statement also cites the opinions issued by the Ministry of Education ("MOE Opinions"). Id. at 23. The Company specifically cautions that FHS "cannot assure [investors] that the [MOE] Opinions will not be interpreted or further laws and regulations will not

11

promulgated" in a manner that "affect[s] or impair[s] [the Company's] ability to obtain tuition and boarding fees." Id. FHS explains that if it is unable to collect such fees, the Company's "business financial condition and results of operation would be materially and adversely affected." Id. Therefore, FHS's representation that favorable government policies were a reason for the Company's success is adequately circumscribed by the additional information it provided regarding the possibility of future adverse regulations.

The plaintiffs also argue that the Registration Statement misstated FHS's connection with Hebei Hengshui High School ("Hengshui"), a well-known and prestigious elite school in China. SAC ¶¶ 10, 87, 99. However, the Registration Statement did not contain any misstatements regarding FHS's connection with Hengshui. As the defendants note, the Registration Statement accurately stated that FHS had a "cooperative relationship" with Hengshui. Defs.' Mot. 9-10, ECF No. 55. The Registration Statement did not claim, as the plaintiffs appear to suggest, that Hengshui was involved in any way in FHS's IPO.

In summary, the SAC fails to allege plausibly that the Registration Statement contained either actionable omissions or misstatements.

### ii. Materiality

Moreover, any alleged misstatement or omission regarding China's adverse regulatory landscape in the Registration Statement would not be material because the information was readily available in the public domain. A misstatement or omission qualifies as material where there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Litwin v. Blackstone Grp., L.P., 634 F.3d 706, 717 (2d Cir. 2011); see also Seibert v. Sperry Rand Corp., 586 F.2d 949, 952 (2d Cir. 1978) ("[W]here information is equally available to both parties, a defendant should not be held liable to the plaintiff under the securities laws for failure to disclose."). A defendant cannot be held liable for failing to disclose "information [that] is in fact readily accessible in the public domain . . . ." Haping, 2023 U.S. Dist. LEXIS 129268, at *30.

The plaintiffs argue that the defendants failed to "disclose the scope and severity of the adverse government regulations that had been proposed [prior to the IPO] and that would ultimately be adopted by the Chinese Government . . . ." SAC ¶ 110. However, the SAC specifically alleges that, prior to the IPO, various public news outlets were reporting on the imminent adverse regulations. See id. ¶¶ 63-69. As such, the

13

information that the plaintiffs contend was omitted from the Registration Statement was, in fact, readily accessible in the public domain. See Seibert, 586 F.2d at 952 (finding no unlawful omission when the information was "[c]learly . . . in the public domain."). The plaintiffs rely on cases finding that information is not readily accessible in the public domain if it is printed in limited-circulation publications and only in Chinese. See Pls.' Opp'n 22. However, as the defendants point out, the news articles reporting on the potential regulations in this case were made in widely accessible publications and in English. See Defs.' Reply 4, ECF No. 58. Indeed, the plaintiffs themselves relied on the news articles, which were published in early March 2021, to make their allegations. SAC ¶¶ 63-64.

In summary, the plaintiffs not only failed to plead that the Registration Statement contained a misstatement or omission -- the statements and omissions they rely on were not material in any event. Accordingly, the plaintiffs' claims should be dismissed. Similar claims involving the alleged failure to disclose the risks posed by the same Chinese regulations at issue in this case have been dismissed by other courts in this District. See Haping, No. 22-cv-9843, 2023 U.S. Dist. LEXIS 129268, at *39, report and recommendation adopted, No. 22-cv-9843, slip op. at 1 (S.D.N.Y. Nov. 8, 2023); Banerjee, 2023 WL 2711279, at *14.

### B. Statute of Limitations

Moreover, the plaintiffs' claims are barred by the statute of limitations. Claims under Sections 11 and 12(a)(2) of the Securities Act must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . ." 15 U.S.C. § 77m. "[T]he limitations period commences . . . when a reasonable investor conducting . . . a timely investigation would have uncovered the facts constituting a violation." City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 174 (2d Cir. 2011).

The plaintiffs cite various news reports and public comments by government officials that the plaintiffs allege should have led the defendants to predict and disclose the adverse regulations. SAC ¶¶ 63-69. However, those same news reports and public comments should have put the plaintiffs on notice of the alleged violations underlying their securities claims. See Haping, 2023 U.S. Dist. LEXIS 129268, at *37-38 (dismissing Section 11 claim as untimely where the plaintiffs' complaint cited public comments that should have put the plaintiffs on notice of a securities violation). Indeed, the news reports and public comments cited by the plaintiff are from March 6-9, 2021, before the Registration Statement became effective and before the Offering. SAC ¶¶ 58-64. Therefore, the

15

plaintiffs knew or should have known of their claims as soon as the Registration Statement become effective on March 11, 2021. But the plaintiffs did not commence this action until May 11, 2022, more than one year later. Therefore, the plaintiffs' claims under Sections 11 and 12(a)(2) are time-barred and must be dismissed.[6]

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted**. The plaintiffs' request to file a third amended complaint is **denied**, but the plaintiffs may file a motion to file an amended complaint explaining how the amended complaint would cure the problems contained in the current complaint. Any such motion must be filed by **January 25, 2024**. The Clerk is directed to close ECF No. 54.

**SO ORDERED.**

**Dated:**   **New York, New York**
            **December 6, 2023**

                                          _____
                                          John G. Koeltl
                                          United States District Judge

---

[6] Because the plaintiffs have not pleaded a primary violation under Sections 11 or 12(a)(2), the plaintiffs' Section 15 claim necessarily fails and is also dismissed.